**CITY OF MEMPHIS, a Municipal Corporation, for the Use and Benefit of the STATE of Tennessee, Plaintiff/Appellee,**

**v.**

**Charles E. MOORE, Trustee, Defendant/Appellant,**

**and**

**Harry J. Skefos and James J. Skefos, Defendants/Appellees, et al.**

Court of Appeals of Tennessee, Western Section, at Jackson.

March 1, 1991.

Application for Permission to Appeal Denied by Supreme Court June 24, 1991.

Norman P. Hagemeyer, Memphis, for plaintiff/appellee.

N. Alan Lubin, G. Breen Bland, Jr., and Michael L. Agee, Memphis, for the appellant Charles Moore.

Larry A. Weissman and Steven W. Dills, Memphis, for defendants/appellees.

FARMER, Judge.

In April, 1988 the defendant, Charles E. Moore, acquired a parcel of real property located at Highway 61 South in Memphis. On June 20, 1988, a sales contract was entered into whereby the defendant agreed to sell this property to the plaintiff, Harry J. Skefos [1] (hereinafter "Skefos"). The City of Memphis was condemning certain portions of this real property in order to expand Highway 61 South and Shelby Drive. A provision was included in the real estate contract which provided in pertinent part that the "[s]eller shall retain title to and receive the payment for that part of the aforesaid property that is to be taken for widening of Shelby Drive and Highway 61 South. Any portion of the property taken for the widening but not used for widening shall revert to the purchaser without cost. Purchaser to have access over said property until widening occurs." On September 15, 1988, the parties closed the sale on this property. The warranty deed contained a metes and bounds description of the property conveyed. Moore made no reservations of rights or exclusions in this warranty deed other than the land to be taken by the city for the expanded rights-of-way. Included in this description, however, and conveyed to Skefos were two parcels referred to as a permanent drainage easement and a slope easement.

On December 16, 1988, the City of Memphis instituted condemnation proceedings

---

1. Although Harry J. Skefos was the only party to the sales contract, both he and the plaintiff, James K. Skefos, ultimately purchased the property. Both will be referred to generally throughout this opinion as "Skefos."

and a controversy arose between Moore and Skefos as to who retained the rights to the condemnation proceeds in the sum of $35,981.84. The city valued the particular property rights as follows: (1) $993 for the permanent drainage easement; (2) $4,750 for the slope easement; (3) $20,625 for damages to the property; (4) $6,582 for acquisition rights to the right-of-way parcel; and (5) $1,200 for the asphalt pavement taken. Moore claimed that he was entitled to the entire condemnation proceeds, and Skefos contends that Moore was only entitled to the "right-of-way" proceeds.

Skefos filed a motion for summary judgment which the trial court granted. The trial court found that Skefos was entitled to $26,368 of the condemnation proceeds. This sum included the permanent drainage easement, the slope easement, and damages to the land. Moore was to receive payment for the right-of-way parcel and the asphalt pavement for a total of $7,782.

The issue on appeal as set forth by the appellant is:

> Whether the Trial Court erred in granting the Motion for Summary Judgment in favor of Defendants, Harry J. Skefos and James J. Skefos.

Summary judgment provides a means where an issue or a case can be disposed of when there are no genuine issues of fact. *Ferguson v. Tomerlin*, 656 S.W.2d 378 (Tenn.Ct.App.1983). The primary question to be determined upon a motion for summary judgment is whether there are any material factual questions which exist before the legal issues can be ruled upon. *Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 389 (Tenn.1986). The movant of the summary judgment motion carries the burden of proving that no genuine issues of material fact exist and that the uncontradicted evidence entitled the movant to a judgment as a matter of law. *Gann v. Key*, 758 S.W.2d 538 (Tenn.Ct. App.1988).

The opponent of the motion need only to demonstrate that there are disputed or contradicted material factual issues. *Belsky v. Payne*, 560 S.W.2d 78 (Tenn.Ct.App. 1977). The disputed facts, however, "must bear directly and materially upon the legal elements of the claim or defense being tested by the summary judgment motion." *Macon County Livestock Market, Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 348 (Tenn.Ct.App.1986). In responding to a motion for summary judgment, the opponent is not required to prove the merits of the case. The opponent must, however, submit evidence by affidavit or otherwise, showing that a material factual issue exists. T.R.C.P. 56.05; *Moman v. Walden*, 719 S.W.2d 531, 533 (Tenn.Ct.App.1986).

If any disputed genuine issues of fact are present in the record, then a summary judgment is improper. *United American Bank of Memphis v. Gardner*, 706 S.W.2d 639 (Tenn.Ct.App.1985). In weighing a summary judgment the court must view all the evidence and pleadings in a light most favorable to the opponent of the motion, *Cawood v. Davis*, 680 S.W.2d 795 (Tenn.Ct. App.1984), and any legitimate factual conclusions that result therefrom must be drawn in the opponent's favor. *Union Planters Corp. v. Peat, Marwick, Mitchell & Co.*, 733 S.W.2d 509 (Tenn.Ct.App.1987).

With the foregoing in mind we will now review the pertinent facts and evidence submitted in this case. Moore claims that he is entitled to the full condemnation proceeds and that the realty sales contract and the warranty deed expressly provide. We fail to see the merit in this argument because the warranty deed only reserved the "right-of-way parcel" to Moore. The warranty deed contains a metes and bounds description of the property to be conveyed. Moore specifically by metes and bounds conveyed to Skefos the permanent drainage easement and the slope easement. Moore fatally failed to reserve any further rights. We also do not find any ambiguity in the sales contract. However, this controversy need not be resolved because the deed is the controlling document of the parties' final intentions and expressions.

Tennessee recognizes the doctrine of merger whereby when "an executory contract has been entered into between the

parties for the sale and purchase of real estate, and subsequently the property is conveyed by a deed to the purchaser named in the contract, that the contract of sale being merely an executory contract merges into the deed and the deed, therefore, becomes the final contract which governs and controls." [2] *Fuller v. McCallum & Robinson,* 22 Tenn.App. 143, 118 S.W.2d 1028, 1037 (Tenn.Ct.App.1937). The warranty deed by its own terms is clearly an unambiguous document having been drafted in metes and bounds and it leaves no room for varying its interpretation. Parol evidence is inadmissible to vary, alter, amend, modify or otherwise contradict an unambiguous document. *Moon v. Webb,* 584 S.W.2d 803 (Tenn.Ct.App.1979).

Moore also contends, however, that this deed should be reformed to reflect the true intentions of the parties. To form the basis for the equitable remedy of reformation there must have been a mutual mistake or a mistake by one party induced by the other's fraud. *Pierce v. Flynn,* 656 S.W.2d 42 (Tenn.Ct.App.1983). In support of Moore's proposition that there exists a "mutual mistake" such that a reformation is warranted, he submitted an affidavit of the closing attorney, a letter written at the time of the closing and a contract or proposal which he submitted to the City of Memphis prior to the closing. In determining whether a mutual mistake exists the court will take into consideration the surrounding circumstances and any factors which tend to shed light on the parties' intentions. 76 C.J.S. *Reformation of Instruments* § 28 (1972).

The affidavit of Michael Hewgley, the closing attorney, states in pertinent part that:

3. At the closing the Seller informed the Purchasers that he had already signed and delivered to the City of Memphis documents conveying to the State of Tennessee certain real property adjoining the Property (hereinafter "the R.O.W. Parcel") together with temporary and permanent easements over the Property, and had agreed to accept from the City of Memphis the sum of $34,150.00 in full payment for the R.O.W. Parcel, easements over the Property, and damages to the Property. At the request of the Seller and the Purchasers, to alleviate the Purchasers' concern about the removal of certain underground tanks on the Property, I prepared a letter from the Seller to the Purchasers by which the Seller conveyed to the Purchasers the Seller's right to have such tanks removed by the State of Tennessee, Department of Transportation, and reserving to the Seller "the right to receive any money for the taking of the land associated with the expansion of the right of way of Highway 61 South and Shelby Drive." A copy of said letter agreement is attached to this Affidavit as Exhibit B.

4. The original of Exhibit B was executed and delivered by the Seller to and was accepted by the Purchasers contemporaneously with the execution, delivery and acceptance of the original of Exhibit A, the Warranty Deed conveying the Property to the Purchasers. *As the closing attorney, it was my understanding* that the Purchasers were not to receive any portion of the consideration for the conveyance of the R.O.W. Parcel, easements over the Property, or damages to the Property as a result of the expansion of the right of way of Highway 61 South and Shelby Drive. (Emphasis added)

The attorney's "understanding" does not support a basis for this cause of action. There are no admissions or allegations that this deed was drafted in error. Additionally, although Moore has submitted evidence which shows that Mr. Hewgley may have been under the misapprehension that

---

**2.** The merger doctrine as it applies in this context is not an all inclusive rule. The rule "does not apply to those provisions of the antecedent contract which the parties do not intend to be incorporated in the deed, or which are not necessarily performed or satisfied by the execution and delivery of the stipulated conveyance."

*Haynes v. Morton,* 32 Tenn.App. 251, 222 S.W.2d 389, 393 (1949), quoting 55 Am.Jur. 737, § 328. These exceptions, however, do not apply to the instant case because Moore specifically conveyed by warranty deed the parcels of land in question.

Moore intended to retain title to all the condemnation parcels, this was never conveyed to, acknowledged or accepted by Skefos and there are no allegations of such. There must be some evidence that Skefos also intended such a result.

The contract or proposal submitted to the city and referred to by Mr. Hewgley in his affidavit stated in pertinent part that:

NOW, THEREFORE, for and in consideration of the sum of THIRTY FOUR THOUSAND ONE HUNDRED FIFTY AND NO/100 ($34,150.00) DOLLARS, Total to be paid by the party of the first part unto the party of the second part, the party of the second part does hereby agree:

1. To convey to the State of Tennessee by Warranty Deed in fee simple the following described parcel of real estate, to-wit:

Identified as Tract 8 on Plan Sheets 10 and 10A of the Right of Way Plans of the above project which are on file and available to the public, said tract being more particularly described as follows:

SEE ATTACHED PLAT AND CERTIFICATE OF SURVEY

Property is a tract located on the east side of U.S. Highway 61 South, at its intersection with the south line of Shelby Drive and the north line of Delta Road, known as 4682, 4690 and 4706 Highway 61 South, Memphis, Shelby County, Tennessee,

with all improvements in the right of way and/or slope easement area.

The slope easement, as shown on the attached plat and as described in the Certificate of Survey, remains vested in the Grantor and is to be used by the State of Tennessee, its contractors or its assigns during construction of said project but NOT thereafter.

2. The Seller does hereby agree to pay any and all current or delinquent taxes due County of Shelby and City of Memphis on the property above described and hereby authorize the City Comptroller or other proper officer to deduct from that sum mentioned as consideration in this contract, a sufficient amount to defray the cost of payment of such taxes.

3. IT IS UNDERSTOOD AND AGREED THAT THIS AGREEMENT IS MADE SUBJECT TO THE APPROVAL AND ACCEPTANCE OF THE CITY OF MEMPHIS AND THAT IN THE EVENT OF THE SAID CITY OF MEMPHIS FAILING TO APPROVE THIS AGREEMENT, THEN IT SHALL BECOME NULL AND VOID AND FOR NAUGHT HELD.

4. Owners hereby grant permission to the City of Memphis to enter upon premises for the purpose of properly sloping driveway and yard, and sodding said yard slope, if necessary.

5. This Agreement is subject to a Partial Release being secured on any existing mortgage, if required.

6. Possession to be given on delivery of Deed,

7. The above monetary consideration consists of:

| | |
|---|---|
| $ 7,575.00 | Land and Permanent Drainage Easement |
| 4,750.00 | Slope Easement |
| 1,200.00 | Improvements (Asphalt Paving) |
| 20,625.00 | Damages (Includes payment in full for loss of parking) |
| $34,150.00 | TOTAL |

8. The consideration mentioned herein includes payment for all property rights taken, also payment for any and all incidental damages to the remainder, compensable under eminent domain.

This contract has no bearing on the mutual intentions of the parties. This was a contract delivered by Moore to a third party prior to the closing of the parties' sales contract. Moore argues that this contract proves that he intended to retain all condemnation parcels and receive the proceeds therefrom. Although this may be true, this does not establish a basis upon which the remedy of reformation can be based. Unilateral mistake alone is not enough. Additionally, we cannot see how the fact that Moore informed Skefos of this document prior to the execution of the warranty deed tends to show any mutual mistake on the part of the parties. What is noteworthy here is the fact that the contract

submitted to the City specifically set out the various parcels and the values attributable to each, nevertheless, with full knowledge of these valuations, Moore specifically retained only one of these parcels.

Additionally, the letter which was drafted at the closing does not tend to show any evidence of a mutual mistake. The letter states that:

> This letter shall serve as our agreement concerning the right I have to have the underground tanks removed at 4682–4706 Highway 61 South by the State Department of Transportation. By this letter, I hereby assign to Harry J. Skefos and James J. Skefos all right I may have now or hereinafter acquire from the State of Tennessee, Department of Transportation, to remove all of the underground tanks at the above address.
>
> Not included in this assignment is the right to receive any money for the taking of the land associated with the expansion of the right of way of Highway 61 South and Shelby Drive.

This letter, in fact, shows that the deed was drafted exactly as the parties intended and the only uncertainty in the parties' minds was clarified by the terms of this letter.

A summary judgment is appropriate when a party fails to make a "showing sufficient to establish the existence of an essential element to that party's case and on which the party will bear the burden of proof at trial." *Moman*, 719 S.W.2d at 533. Since the inception of this contractual arrangement, Moore has expressly reserved only the right to the "land associated with the expansion of the right of way of Highway 61 South and Shelby Drive." This is but one parcel which he did not convey to Skefos. This parcel does not include the drainage easement, the slope easement or damages to the property. Moore expressly conveyed by metes and bounds these easements to Skefos. Moore was well aware of these condemnation proceedings and, if it were the parties' intentions that he was to retain title or the right to receive these proceeds from the condem-

nation, he could have expressly so provided. However, he made no such reservation and we see no indication that the parties mutually intended otherwise.

For the foregoing reasons we affirm the judgment of the trial court. Costs of this appeal are taxed against the appellant for which execution may issue if necessary.

CRAWFORD, J., and McLEMORE, Special Judge, concur.