# FILED

**December 10, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE

AT NASHVILLE

| | | |
|---|---|---|
| CONTINENTAL LAND COMPANY, INC. | ) | |
| Plaintiff/Appellee | ) | |
| | ) | |
| VS. | ) | Case Number: |
| | ) | M1998-00431-COA-R3-CV |
| INVESTMENT PROPERTIES | ) | |
| COMPANY, LTE CORPORATION, | ) | Marion Chancery |
| DARLENE BROWN and ROBERT L. | ) | No. 5860 |
| BROWN | ) | |
| | ) | |
| Defendants/Appellants | ) | |

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT
FOR MARION COUNTY

THE HONORABLE JEFFREY STEWART, PRESIDING

EDWIN Z. KELLY, JR.
KELLY & KELLY, P.C.
P.O. BOX 869
309 BETSY PARK DRIVE
JASPER, TENNESSEE 37343

ATTORNEY FOR THE PLAINTIFF/APPELLEE

SHELBY R. GRUBBS
WILLIAM P. EISELSTEIN
MILLER & MARTIN LLP
SUITE 1000 VOLUNTEER BUILDING
832 GEORGIA AVENUE
CHATTANOOGA, TENNESSEE 37402

ATTORNEY FOR DEFENDANT/APPELLANT

## AFFIRMED  AND REMANDED

PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, P. J.
KOCH, J.

## OPINION

This appeal arises out of a transaction for the sale of real property in Marion County, Tennessee. The plaintiff, Continental Land Company, sued to require defendants to convey property included in a real estate sales contract between the parties but excluded in a deed that was executed and duly filed on March 10, 1994.  After a hearing, the trial court granted judgment for the plaintiff, by order conveyed the property, and awarded damages of $5,000.  Defendants, Investment Properties Company, LTE Corporation, Darlene Brown and Robert Brown, appeal.   For the following reasons, we affirm the order of the trial court.

Continental Land Company is owned by Joseph Godochik of Corona del Mar, California.  Mr. Godochik is a self described real estate investor.  Mr. Mickey Wilson, a resident of Chattanooga, Tennessee, is Vice-President of Continental Land Company.

Investment Properties Company is a Tennessee limited partnership.  Robert  Brown, a licensed attorney whose practice was almost exclusively in real estate, and his wife were the sole shareholders of LTE Corporation, a title insurance business. LTE Corporation and the Browns were the sole partners in Investment Properties. Robert Kempson acted as the seller's agent during the transaction.

In 1994, Continental Land Company ("Buyer") and Investment Properties ("Seller") commenced negotiations for the sale of a sizable tract of land owned by Seller.  Buyer intended to develop the land and sell tracts.  In the course of the negotiations, Mr. Godochik visited that land, and the parties eventually determined a sales price of $315,000.

On February 17, 1994,  the parties executed a Real Estate Sales Agreement drafted by Mr.

Brown or his agent which included the negotiated terms. Buyer did not retain the services of an attorney. The sales agreement contained the bargained for sales price and a detailed description of the subject property. The agreement stated:

> We hereby agree to purchase the lot (or acreage) legally described as Approximately 773 acres of land between Ladd's Mtn. and Barnett Point including Graham Cove located on Map 152 Tract 5 in Marion County, Tennessee; being the property now encumbrance [sic] by the Nick-A-Jack Partnership Deed of Trust.

The sales agreement excluded from this tract a fifty (50) foot strip adjoining property owned by the Haggards. According to Mr. Kempson, Seller's agent, the parties' understanding under the sales agreement was that this was a sale in gross, rather than a sale of a specified number of acres and that Buyer was purchasing all property Seller owned that had not already been sold to others.[1] Mr. Godochik described the purchase as follows:

> I think the key to it, and we actually did this on purpose so there would be no question about what we were buying and there would be nothing left out, was the property to be conveyed as all of the property now covered by the Nickajack Partnership first mortgage and that's how we wanted it described so there would be no question.

Included in the tract to be purchased was a roadway and strip of property subject to Tennessee Valley Authority ("TVA") power line easements. Mr. Kempson admitted that both these tracts were " sort of crucial to the development." Mr. Godochik testified that the road was "the only way that you could put a road that would be driveable by a vehicle" due to the hilly terrain. He indicated that access to the power line property was also crucial, testifying:

> That's the only way to get back up into the back of the property, because Mr. Brown had sold the properties fronting the road, so the only way to get behind the properties that he had sold was to go around them down the power line road.

As the closing date approached, Buyer began requesting a meeting to review the documents involved in the sale, but Mr. Brown delayed, stating he had to finish the description. Finally, a few days prior to the March 10, 1994 closing date, a pre-closing conference was held in Mr. Brown's office. Mr. Wilson, Buyer's Vice-President, represented Buyer at the meeting. Mr. Kempson was present on Seller's behalf, and Mr. Brown appeared for a few minutes. Mr. Kempson and Mr. Wilson reviewed a deed prepared by Mr. Brown and compared it to a plat Mr. Brown gave them. Mr. Brown did not

explain the description or review the documents with Mr. Kempson or Mr. Wilson. He never indicated to them that the deed reflected any changes from the contract terms. Mr. Kempson later commented on how very confusing the description and plat were to him and that he did not know how to read the plat and the description. Mr. Wilson characterized the process of attempting to read the description and plat as "a nightmare" and testified:

> And the day that we got there, we both sat down, and being novice[s], obviously, we were brought a page of the description and we started – I started reading it and Mr. Kempson started trying to follow the lines . . . .

Mr. Wilson found a typographical error which was corrected. When asked whether he felt he needed legal counsel to assist during this transaction, Mr. Wilson responded:

> No, I really didn't . . . I felt like a Vanderbilt graduate, an attorney, been an attorney for many, many years, and the national exposure of Lawyer's Title and we've used them in several other occasions, I just didn't see any need for that additional expense.

The record shows that Mr. Brown was the only attorney involved in this transaction and he issued the title insurance policy as President of Lawyers Title and Escrow.

On March 10, 1994, the deed prepared by Mr. Brown was executed and filed with the Marion County Register of Deeds. Mr. Wilson signed the deed as Vice-President of Continental Land; Mr. Brown signed the deed on behalf of Investment Properties.

Some months later, while one of Buyer's agents was showing a tract of the property at issue, it was discovered that the deed drafted by Mr. Brown differed from the contract executed by the parties in the following respects: (1) Seller retained ownership over an access road he was contractually obligated to construct which adjoined a tract Seller had previously sold to the Vannettas; (2) Seller retained ownership of a seventy-five (75) foot strip of land adjacent to a tract owned by the Haggards, although the contract had described it as a (50) fifty foot exclusion; (3) Seller retained rights to the TVA power transmission line easement, notwithstanding the fact that this exclusion was not in the Sales

Agreement; (4) Seller retained a one hundred (100) foot strip adjacent to the Bullard tract, which was not included in the contract; and (5) Seller retained a non-exclusive easement to connect to any roads and utility lines constructed by Continental which was not included in the contract. The result of the discrepancies was that Buyer's property was substantially less accessible, making its plans for development much more difficult to achieve and more expensive. In addition, the property conveyed was less than all the property covered by the Nickajack Partnership first mortgage.

Upon learning of the discrepancies between the contract and the deed, Mr. Godochik telephoned Mr. Brown, who informed the shocked Mr. Godochik that Mr. Godochik's company, the Buyer, did not own the land at issue. When Mr. Godochik inquired what it would take to own these tracts which were necessary to develop the property, Mr. Brown purportedly agreed to accept additional money. Mr. Godochik flew back to Tennessee with a check, believing the money was necessary to correct the paperwork and make the deed reflect the agreement stated in the contract.

After he arrived at Mr. Brown's office, Mr. Godochik asserted that he already owned the property, which Mr. Brown disputed. Upon determining that he could not resolve the controversy, Mr. Godochik commenced this action alleging fraud, misrepresentation, and breach of contract. The complaint sought compensatory and punitive damages and requested that the Seller be required to convey to Buyer the property excluded from the deed but included in the sales contract.

At trial, Mr. Brown admitted that exclusions for the road, the power line and the 25 extra feet adjoining the Haggard property had not been included in the parties' written contract. He also admitted that no adjustment in the contract price had been made to compensate Buyer for the reduction in acreage in the deed. He conceded that he had intended, at the time of the contract, to transfer all the property that was encumbered by the Nickajack deed of trust, but stated, "that's what the deed covered, with these three minor exceptions." In essence, Mr. Brown admitted that he intentionally prepared the deed to convey less property than he promised to convey in the contract.

At the close of the evidence, the trial court made the following findings:

> Now what happened, essentially, is, and there really doesn't seem to be

any dispute about this at all, at some point in time, Mr. Brown altered the terms [of the contract] and he placed his alterations in the documents and he furnished those documents to Mr. Wilson and Mr. . . Kempson prior to the closing, at what he called a pre-closing. At this point in time, the case sort of reminded me of one of those pictures that we used to see when we were younger that they passed out to children. And it's a picture and in it are hidden other pictures and you try to identify all of those figures identified within the big picture. Some people do that real well, they have a creative mind and they can pick those pictures out, and some people can't do it for the life of them. And that's sort of the way real estate descriptions are for some people. Some people who are trained in reading them and being careful about understanding them can read them and project them mentally in a visual way. Other people just aren't able to do that. While Mr. Wilson may have had some experience as a banker and had begun doing some real estate development work with Mr. Godochik, there's no indication that he had any special training or experience in reading or looking at descriptions. There's no question that Mr. Brown had the superior position, number one, of having drawn those documents, and number two, having a lot more experience as a real estate lawyer in understanding those kinds of things. So it sort of leaves us in a position where Mr. Brown drew these documents, made these changes and they were different from what was in the contract and he just sort of threw them out on the table and said, " Mr. Kempson, you and Mr. Wilson read these over." Mr. Kempson was still his agent. And they tried to plot them on a plat that was introduced here as an exhibit . . . But from that exhibit there were no particular calls or directions, it was just sort of an overlay that I think had been prepared by Mr. Hopkins when he was doing some other work in earlier years for Mr. Brown. I think in view of the circumstances and the changes that were made and the acts that Mr. Brown acknowledges, that he did not specifically address these but just handed it to them and let them see if they could find them and hopes then to rely on the Doctrine of Merger in support of his position, [and] should not be permitted to do that. I find in favor of the plaintiffs, that the acts of Mr. Brown were intentional in changing these and that they did not intend to accept these changes and that the transaction should be made according to what was originally done. And that is, that the properties that had been retained by Mr. Brown should then be deeded over and made a part of the overall transaction and should be part of the description transferred to the plaintiff in this case.

The trial court granted a $5,000 judgment against Seller as compensatory damages and ordered the property at issue conveyed to Buyer.[2]

I.

Seller argues that the doctrine of merger precluded reformation of the deed and precluded the court's order conveying the property excluded from the deed but included in the contract. We disagree.

As a matter of law, the doctrine of merger gives priority to a later conveyance of real property over an earlier, executory contract to sell the property. *See City of Memphis v. Moore,* 818 S.W.2d 13, 16 (Tenn. Ct. App. 1991).

> Tennessee recognizes the doctrine of merger whereby when "an executory contract has been entered into between the parties for the sale and purchase of real estate, and subsequently the property is conveyed by a deed to the purchaser named in the contract, that the contract of sale being merely an executory contract merges into the deed and the deed, therefore, becomes the final contract which governs and controls."

*Id.* at 15-16 (quoting *Fuller v. McCallum & Robinson, Inc.,* 22 Tenn. App. 143, 159, 118 S.W.2d 1028, 1037 (1937)).

In this State, fraud and mutual mistake are the two recognized exceptions to the doctrine of merger. *See City of Memphis*, 818 S.W.2d at 16. Reformation of a deed is appropriate only when one of these exceptions is evident. *See id.* The parties do not dispute the fact that the contract and deed were both duly executed. Therefore, the issue before this court is whether the trial court properly ruled that Mr. Brown's conduct caused a mutual mistake or rose to the level of fraud.

Under Tennessee Rule of Appellate Procedure 13(d), the trial court's findings of fact are reviewed *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. However, in the instant case, the trial court made no specific findings of fact on the ultimate issue of fraud to which the presumption of correctness may attach. Therefore, our review shall be *de novo* based upon the record on that issue. However, the court made a number of findings of fact relative to the ultimate issues of fraud and whether the doctrine of merger precludes the relief requested. We review these findings with a presumption of correctness. Having reviewed the entire record, we are convinced the trial court's findings of fact are fully supported by the evidence.

Buyer argues that this is a case of mutual mistake because the agents for both parties present at the closing, namely Mr. Kempson and Mr. Wilson, were unaware that the terms of the deed did not

comport with the terms of the contract. In determining whether a mutual mistake exists, the court will take into consideration the surrounding circumstances and any factors which tend to shed light on the parties' intentions. *See City of Memphis*, 818 S.W.2d at 16 *(quoting* 76 C.J.S. *Reformation of Instruments* § 28 (1972)).

In reviewing the circumstances surrounding the execution of the deed in this case, we cannot hold that the evidence in the record supports a finding of mutual mistake. Mr. Brown's signature appears on the deed, not Mr. Kempson's. Therefore, the fact that Mr. Kempson may not have known about the discrepancies between the contract and the deed is irrelevant. We cannot dispute Seller's argument that this is not a case of mutual mistake because Mr. Brown admitted that he drafted the deed and deliberately made the changes at issue. The trial court's order, which made a specific finding that Seller "intentionally" drafted the deed to retain the disputed property rights, supports that argument. Under these circumstances, we are unable to find a mutual mistake. Therefore, the only remaining issue is whether Mr. Brown's actions rose to the level of fraud.

Under Tennessee law the elements of fraud are: (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation related to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material facts; and (6) plaintiff suffered damage as a result of the misrepresentation. *See Metropolitan Government of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992). It is undisputed that Mr. Brown never made any affirmative misrepresentations to Buyer during the parties' course of dealing.

That fact does not end our analysis, however, because Tennessee law recognizes that under certain circumstances a claim for fraud can arise from concealment of material facts. *See Macon County Livestock Mkt., Inc. v. Kentucky State Bank, Inc.,* 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986). This court has addressed the meaning of concealment:

> As a general rule to constitute fraud by concealment or suppression of the truth there must be something more than mere silence, or a mere failure to disclose known facts. There must be a concealment, and the silence must amount to fraud. Concealment in this

> sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. The term generally infers that the person is in some way called upon to make a disclosure. It may be said, therefore, that, in addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, **or else** there must be a legal or equitable duty on the party knowing such facts to disclose them.

*Hall v. DeSaussure*, 41 Tenn. App. 572, 583-84, 297 S.W.2d 81, 87 (1956) (emphasis supplied).

Thus, under this definition, concealment may be actionable when it constitutes a trick or contrivance or when there is a duty to disclose. *See id.* In the case before us, we find both.

The material fact which Mr. Brown failed to disclose and which he concealed was that the deed did not conform to the contract. Here, the record clearly supports a finding of trick or contrivance. *See id*. As the trial court found, Mr. Brown intentionally altered the legal description of the property in the deed to Buyer's detriment so that it no longer reflected the written agreement all parties had previously executed. As the trial court found, Mr. Brown's immersion in the legal details of the transaction in his capacity as the sole real estate lawyer and title expert gave him the opportunity to exploit his position as the seller, and he clearly did so. On its first page, the warranty deed Mr. Brown prepared listed five limitations on the conveyance, including four easements, none of which are at issue here. Instead of including the changes at issue which he unilaterally made, most of which were also easements, on this first page of the deed along with the other easements, Mr. Brown hid them in an almost incomprehensible, three page single spaced description containing only four sentences, three of which are on one page. An experienced real estate attorney would have no easy time comprehending Mr. Brown's description, and Mr. Brown was well aware that Buyer was unrepresented. Both Mr. Wilson and Mr. Kemper testified to their lack of understanding of the description. The surveyor who later surveyed the property also testified to the difficulty in following the description. These circumstances support a finding of trick or contrivance.

Furthermore, where there is a duty to disclose a material fact, failure to make such disclosure can constitute concealment and, consequently, fraud by concealment. The duty to disclose arises when (1) there is a fiduciary relationship between the parties; (2) one of the parties has expressly reposed trust

and confidence in the other; or (3) the contract is intrinsically fiduciary and calls for perfect good faith. *See Justice v. Anderson County,* 955 S.W.2d 613, 616-17 (Tenn. Ct. App. 1997); *see also Domestic Sewing Mach. Co. v. Jackson*, 83 Tenn. 418, 424-25 (1885).

In Tennessee, an implied duty of good faith is imposed in the performance of contracts. *See Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996). In determining whether a party has acted in good faith in the performance of a contract, courts must judge the performance against the intent of the parties "as determined by a reasonable and fair construction of the language of the instrument." *Id.* Thus, the common law duty to perform a contract in good faith includes the duty to perform consistently with the objective and reasonable expectations of the parties. Mr. Kempson, Seller's agent, assumed the deed conformed to the sales contract. Mr. Wilson, Buyer's agent, testified he had no reason to believe the deed did not conform to the sales contract because the deed was merely consummating the deal. Mr. Godochik testified he had no reason to think Mr. Brown would do otherwise than draft the deed in accordance with the sales contract.

We have no problem finding that Buyer's expectations that Seller would actually convey the real property agreed to were reasonable. The essence of Seller's performance of the contract was to convey the land described therein. As Seller, Mr. Brown promised in the contract of sale to convey to Buyer the land described therein for the purchase price also set out therein. Instead, he intentionally and unilaterally prepared the deed to convey less than the property he promised. We think Buyer reasonably expected Seller to perform his fundamental undertaking to convey the property as agreed to. When Mr. Brown prepared the deed contrary to that expectation, he, at the least, was under a duty to disclose to Buyer the discrepancy between the deed and the contract.[3] Moreover,

> [w]e think it should be remembered that, according to custom and practice, it was the duty of the sellers to furnish the buyers a deed conveying a good title to all of the property agreed on.

*Town of McMinnville v. Rhea*, 44 Tenn. App. 612, 621-22, 316 S.W.2d 46 (1958). This duty exists unless common observation or ordinary diligence would have furnished the information. *See Simmons v. Evans*, 185 Tenn. 282, 285-86, 206 S.W.2d 295, 296 (1947).

Under the limited circumstances of this case, we find that Mr. Brown was under a duty to specifically disclose the changes he unilaterally made to the deed in contravention of the bargain he struck in the contract. In *Simmons v. Evans*, our Supreme Court imposed a "duty to speak" on sellers who withhold information materially affecting the subject of the agreement from buyers, unless common observation or ordinary diligence would have furnished the information. *See id.*, 206 S.W.2d at 296. In *Simmons*, the buyers unknowingly purchased a house that had no water from 7 p.m. to 7 a.m. After discovering the situation, they confronted the sellers who stated that they did not inform the buyers " because we knew that you would not buy the property if we told you." *Id.* at 286. After the trial court refused to reform the deed, the Supreme Court reversed, holding that because the sellers "knew complainants to be unaware of this very material fact . . . [t]hey were, therefore, duty bound to disclose this fact unless common observation or such inquiry as the exercise of ordinary prudence required would have furnished such information." *Id.* The Court concluded that the condition would not have been discovered through the exercise of ordinary prudence. That same reasoning applies here. Mr. Brown's own agent testified that the road adjoining the Vannetta property and the TVA power line easement were "crucial" to Buyer's development plans. Mr. Brown purposefully wrote the deed so that he retained ownership of those material tracts and crafted its language to make the changes unintelligible to all but the most experienced real estate experts. He did so knowing full well that the document would be reviewed only by lay persons and not by a lawyer. He provided them with a map on which, as the trial court observed, "there were no particular calls or directions." At trial, Mr. Brown admitted that this map was not complete and he had to refer to other separate drawings in order to prepare the deed. Neither the roads nor sections identified in the deed nor the starting point of the description were included on the map. The surveyor who drew a new map to show the differences between the contract and Mr. Brown's deed testified that the deed was not easy to follow. Having reviewed the deed Mr. Brown wrote, we have no problem concluding that the changes he made would not have been discovered by lay persons through the exercise of ordinary diligence. Under these circumstances, we believe the rule in *Simmons* applies. Mr. Brown's provision of the description and the plat were not

sufficient to constitute disclosure.

The prior discussion focuses on Mr. Brown's duty as Seller of the property. In view of the previously-cited holding of this court in *Justice v. Anderson County* that a duty to disclose may arise where one of the parties has expressly reposed trust and confidence in the other, we are constrained to discuss Mr. Brown's actions in light of his role as the only attorney in this transaction. *See Justice*, 955 S.W.2d at 616-17. Mr. Wilson testified that he saw no reason to employ additional counsel in view of Mr. Brown's education and experience in real estate law. Mr. Godochick stated that in choosing to let Mr. Brown prepare the documents necessary for closing, he primarily relied on Mr. Brown's status as an agent for Lawyer's Title. He stated that he had used Lawyer's Title to do paperwork for closings in the past and the deed had always been prepared "the way it's supposed to."[4]

When Mr. Brown undertook to prepare the deed, having held himself out as an experienced real estate lawyer whose company performed many real estate closings, he also undertook to perform those responsibilities in accordance with standards expected of attorneys.[5] An attorney, acting in the course of his or her profession or in a transaction in which he or she has a pecuniary interest, has a duty to use reasonable care in obtaining or communicating information meant to guide others in their business transactions. *See Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997). Tennessee courts have held that attorneys can be liable to non-clients for negligent misrepresentation under certain circumstances, a holding which necessarily implies a duty of care to the non-client. *See Stinson v. Brand*, 738 S.W.2d 186 (Tenn. 1987) (attorneys, like other professionals such as land surveyors, accountants, or title companies, may be liable for negligently supplying false information for the guidance of others in their business transactions); *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 73(2) (Tentative Draft No. 8, March 21, 1997);[6]

In *Collins v. Binkley*, 750 S.W.2d 737 (Tenn. 1988), the Supreme Court considered an action by purchasers of real estate against the seller's attorney for negligently omitting required language from the acknowledgment. The court noted that:

it is undisputed that the attorney was employed by the seller to prepare the deeds and

that no privity of contract existed between plaintiffs and the attorney. However, there was evidence that the attorney knew that plaintiffs would rely upon him and that it was his professional responsibility to prepare a valid warranty deed entitled to registration... and that plaintiffs would suffer loss if the acknowledgment was defective. Further, there was evidence that the omission in the acknowledgment was below the standard of care required of an attorney preparing instruments for conveyance of real property. Those are the elements that give rise to the duty of an attorney to non-clients and may result in liability for the damages sustained by non-clients.

*Id*. at 739.

These principles establish a duty on the part of a lawyer who allows a third party to rely on that lawyer's professional services which is sufficient to constitute a duty to disclose under *Justice v. Anderson County*. They also suggest that Mr. Brown might be subject to liability to Buyer if he had accidentally or negligently failed to include all the property covered by the sales contract in the deed he prepared. In order to avoid the mutual mistake exception to the merger doctrine, Mr. Brown has adamantly asserted that the exclusions were not accidental, negligent, or mistaken on his part. Rather, they were intentional, and Mr. Brown used his expertise in real property law to draft a deed he knew was inconsistent with the sales contract. We will not condone his further attempts to use his expertise to the Buyer's disadvantage by approving his assertion that the doctrine of merger precludes the equitable relief Buyer seeks. We agree with the sentiments of the trial court:

I think in view of the circumstances and the changes that were made and the acts that Mr. Brown acknowledges, that he did not specifically address these but just handed it to them and let them see if they could find them and hopes then to rely on the Doctrine of Merger in support of his position, [and] should not be permitted to do that.

The trial court did not err in providing the equitable relief requested. *See Gray v. Boyle Investment Co*., 803 S.W.2d 678 (Tenn. Ct. App. 1990) (defendants held liable for failure to disclose to the purchaser prior to a real estate closing the fact that foreclosure proceedings had been instituted on the subject property). Whether that relief is more properly characterized as reformation of the deed or as specific performance of the contract to convey land,[7] the trial court's order divesting Seller of ownership in the land excluded from the deed and conveying such ownership to the Buyer is affirmed.

II.

Seller argues that the trial court erred in awarding Buyer $5,000 in damages for one-half an acre retained by Seller which was sold to an innocent purchaser before trial.

Under the parties' original contract, Seller was to retain a fifty (50) foot strip adjacent to the Haggard tract. It is undisputed, however, that Seller retained a seventy-five foot strip, which was then sold to the Haggards. The surveyor testified that the improperly retained strip was approximately one-half acre. Mr. Godochik's testimony at trial set the value of this strip at $5,000. In light of this evidence, we cannot say the award of damages was error.

III.

The judgment of the trial court is hereby affirmed and this case is remanded to the trial court for such further proceedings as may be necessary. The costs of this appeal are taxed to the Appellants for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:


_____
BEN H. CANTRELL,
PRESIDING JUDGE, (M. S.)


_____
WILLIAM C. KOCH, JR., JUDGE