IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 11, 2001 Session

## MARILYN WILLOCKS JEFFRIES v. IRENE GAMBLE, ET AL.

Appeal from the Chancery Court for Blount County
No. 99-137     O. Duane Slone, Judge, by Interchange

FILED AUGUST 6,  2001

No. E-2000-03120-COA-R3-CV

After purchasing approximately 30 acres of land from Defendant, Plaintiff later discovered that the deed had been incorrectly drafted.  Plaintiff brought suit seeking to have the deed reformed.  The Trial Court held that Plaintiff had proven by clear and convincing evidence that the parties had intended for a .61 acre tract of land to be part of the property sold to Plaintiff and the deed should, therefore, be reformed to include this additional land.  Defendants appeal.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Chancery Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., joined. HOUSTON M. GODDARD, P.J., not participating.

David R. Duggan, Maryville, Tennessee for the Appellants Irene Gamble and Roma Lois Gamble.

Chris Ralls, Maryville, Tennessee for the Appellee Marilyn Willocks Jeffries.

# OPINION

## Background

Plaintiff Marilyn Willocks Jeffries ("Jeffries") purchased a tract of land from Defendant Irene Gamble ("Gamble")[1] consisting of approximately thirty acres located in Blount County. Jeffries alleges that she later discovered that the warranty deed omitted an approximate .61 acre tract ("Tract") of land which was intended to be part of her purchase. Jeffries asserted that since obtaining the property in 1995, she exercised dominion and control over the Tract and it was the parties' intention for the Tract to be included in the land she bought. Jeffries alleged in her Complaint that there was a mutual mistake made by the parties, and she, therefore, was entitled to reformation of the deed. Jeffries tendered to the Trial Court the sum of $3,660.00, which she claimed was the agreed upon value of the Tract at the time the property originally was purchased.

Gamble essentially denied that she intended to sell the Tract to Jeffries or that there was a mutual mistake. Gamble filed a counter-claim asking the Trial Court to eject Jeffries from the Tract and to restore possession to Gamble. Gamble also requested that the property be returned to her in the same condition as it was in at the time Jeffries wrongfully asserted dominion and control over the Tract.

Jeffries testified that she purchased the property from Gamble because she wanted to return to the community where she had grown up and most of her family still resided. Jeffries stated that she and Gamble agreed on a purchase price of $6,000.00 per acre for the land. Jeffries stated that as three sides of the property purchased were fenced in, she discussed with Gamble the boundary for the remaining side. According to Jeffries, she and Gamble agreed that the boundary would be by a persimmon tree. Jeffries admitted that Gamble and her son did not want to sell a barn located near the Tract and that they wanted to keep some distance from the property being sold and a house occupied by Gamble's granddaughter. Once it was agreed that Jeffries would not be purchasing the barn, she claims they quickly agreed on what would be the boundary line. After the survey was conducted, an iron pin and a flag were set into the property showing the boundary line. The location of the iron pin and flag is consistent with Jeffries' claim as to where it was agreed the property boundary would be. The iron pin and flag were set by the surveyor, Tony Abbott ("Abbott") and his son. Jeffries stated that with the exception of the barn, she was buying the whole field. Abbott prepared the plat which was recorded in the Blount County Register of Deeds Office. This plat was used by the attorney who prepared the deed.

Jeffries first learned there was a problem with the deed when she wanted to build a barn on the Tract. Although she was unable to locate the iron pin, Jeffries knew where the property line was and had the footers for the barn set accordingly. Abbott came to the property with a metal

---

[1] The land was actually purchased from Irene Gamble and Roma Lois Gamble, both of whom are defendants in the action. Ms. Roma Gamble was in poor health and did not participate in a material manner at trial. For this reason, we will omit any further reference to Defendant Roma Gamble.

detector and could not locate the pin either. Jeffries then asked Abbott to re-survey the property because her son was purchasing some of her property, and it was going to be divided. This is when she learned there had been a mistake in the drafting of the plat and deed which did not show the Tract as being part of the property she had purchased. Abbott told her he had inadvertently decreased the amount of property she had bought through an error in setting the appropriate boundary line, that it was his fault, and he "apologized profusely." When Jeffries tried to explain the situation to Gamble, Gamble told her she was too ill to discuss it and Jeffries needed to discuss the situation with her son, Roy Gamble. Jeffries did this, claiming that when she did so, Mr. Gamble was "quite hostile." Jeffries stated that Gamble never complained or otherwise indicated that she thought Jeffries was trespassing on her property.

Gamble testified that Jeffries approached her about buying some of her land which Gamble had inherited from her deceased husband. Gamble stated that the property lines were discussed before a sale price was determined. The original discussions were for the property line to go from Jeffries' driveway up to a certain tree located next to property owned by neighbors.[2] Gamble believed the boundary line was set that day. Except for inspecting the property a few days before trial, Gamble has not been back to the property since that time.

A plat was prepared by Abbott and a deed also was prepared which Gamble signed. Gamble stated that she has known Tony Abbott virtually his whole life and they attend the same church. Gamble testified that the plat and deed correctly showed the property she had intended to sell to Jeffries. There is a house occupied by Gamble's granddaughter and a barn on the property close to the Tract. Gamble claimed that she told Jeffries she wanted to keep the land where the barn was located and would not sell that part of the property. Gamble testified that at no time did she intend to sell the Tract to Jeffries. Gamble never went on the property with Jeffries to show her exactly where the property line would be. Gamble admitted that on the same day she learned Jeffries was claiming there was a problem with the deed because it did not show Jeffries owning the Tract, Jeffries offered her money for the Tract.

Roy Gamble also was called as a witness. Prior to the sale, Mr. Gamble farmed the property sold to Jeffries. Mr. Gamble testified that the second time he went to the property with Jeffries and Abbott was when the boundary lines of the property to be sold were established. After that meeting, Abbott was supposed to survey the property. Mr. Gamble saw the plat and deed that had been prepared. According to Mr. Gamble, the plat and deed correctly showed the amount of property that was intended to be sold. Mr. Gamble was aware that Jeffries had bricks delivered and placed on the Tract. Mr. Gamble did not say anything about this to Jeffries, but could not explain why. Mr. Gamble realized there had been a mistake when Jeffries started building a barn on the Tract. Instead of talking with Jeffries, Mr. Gamble contacted an attorney.

---

[2] The tree referenced by Gamble was not the persimmon tree which Jeffries claims marked the boundary.

Abbott testified at trial. He is the County Engineer for Blount County. He also conducts land and construction surveying and is a licensed surveyor. He has lived in the same community as Gamble and attends the same church. He went to school with Roy Gamble. Jeffries and Abbott are first cousins. Abbott was present when Gamble and Jeffries determined where the property line would be. When surveying the property, an iron pin and flag was placed at the area where the boundary line would be. There was a persimmon tree located at the corner where the iron pin and flag were located. Abbott prepared the plat and it was recorded. Sometime in 1999, he discovered that he had made a mistake. Jeffries had called him and indicated that she was going to sell a portion of the land to her son and needed her land divided. Jeffries also told him she could not find the iron pin. Abbott went to the property to locate the pin. The pin was not where he had originally placed it. Abbott did not discover the error he had made on the plat until he "went back in there to re-establish the point". Abbott then testified as follows:

Q       Where did they agree the line should be?

A       The only understanding I ever had, based on the conversation that we had in that field that day, that corner was to be there in the vicinity of that persimmon tree.

Q       All right. Consistent with what Mrs. Jeffries is claiming in this lawsuit?

A       Yes.

* * * *

Q       Who made the mistake, Mr. Abbott?

A       I made a mistake.

Q       And you have told everybody that?

A       Yes.

Q       You take responsibility for it?

A       Yes.

Abbott also testified he was on the property in 1997 because Jeffries was having problems with Gamble's daughter cutting wood from Jeffries' property. He stated the iron pin and flag then were located where they had been placed originally, near the persimmon tree.

In addition to the live testimony, the parties stipulated to the testimony of several witnesses. Prior to trial, Gamble filed a motion in limine seeking to preclude this testimony claiming it was irrelevant. The Trial Court denied the motion, although no reason for doing so was set forth in its order. Prior to trial, Gamble orally renewed the objection. The Trial Court again overruled the motion, stating "[c]ircumstantially, it might tend to prove that the [property] lines were as Mrs. Jeffries claims that they are, so I certainly think that these facts would be relevant." While the parties agreed that these witnesses were not present during discussions about the boundary line, the parties stipulated that these witnesses would testify as follows (subject to Gamble's previous objections):

> With regard to the testimony of the witnesses, Mack Brown, Charlie Long, Andy Waters and Wells Waters, the parties stipulate that an iron pin and flag that were set by Tony Abbott and his son, Tyler Abbott, in 1995, and which were shown to them by the Plaintiff in 1995 or 1996, were located as she claims the property line should be located in this action.

> These witnesses will also testify that they maintained the entire area in dispute in this cause for Ms. Jeffries from 1995 on and that their activities included plowing, seeding and mowing hay during that period of time.

> It is further stipulated that these witnesses would testify that Ms. Jeffries caused to be placed on a portion of the area in dispute certain construction materials during late 1998.

> * * * *

> The parties stipulate that Daniel Tyler Abbott, if called to testify, would state that he assisted his father, Tony Abbott, in setting the iron pin and flag at the point which the Plaintiff claims is the correct line. That he was shown where the Gambles claim the original line between the parties is located in the middle of the field and that this is not the same location that he helped Tony Abbott place the original iron pin and flag in 1995.

After trial, the Trial Court[3] issued a Judgment and Order for Reformation, finding that Jeffries had proven by clear and convincing evidence that there was a mutual mistake in the deed. The Trial Court also concluded that the evidence did not support the equitable defenses of estoppel

---

[3] The Chancellor originally assigned to this case recused himself because of a conflict of interest. The matter was transferred to Circuit Court Judge O. Duane Slone, who heard the case by interchange.

and waiver. The Trial Court ordered the deed to be reformed and that the funds deposited by Jeffries into the court registry be disbursed to Gamble. This appeal followed.

## **Discussion**

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo*, without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

We first address Gamble's argument that the Trial Court erred in admitting testimony of various witnesses. As indicated above, prior to and at trial, Gamble argued that this testimony was irrelevant and the testimony was stipulated to subject to the objections. The Trial Court ruled that this testimony was relevant because it might tend to prove that the property lines were as Jeffries claimed.

Relevant evidence is generally admissible unless the federal or state constitutions, applicable procedural rules, or other laws require its exclusion. *Castelli v. Lien*, 910 S.W.2d 420, 425 (Tenn. Ct. App. 1995). In order to be relevant, evidence must tend to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.*; Tenn. R. Evid. 401. "One of the most important functions of a trial judge is to control the admission of the evidence. Trial judges have broad discretion over the admissibility of evidence … the order of the proof … the scope and extent of examination … and the qualification of expert witnesses." *Castelli*, 910 S.W.2d at 425 (citations omitted). An appellate court will reverse a trial court's decision on the relevancy of evidence only if there has been an abuse of discretion and when the error has affected substantial rights of one or both of the parties. *Id.* at 425-26; Tenn. R. Evid. 103(a).

In determining whether a mutual mistake exists, a trial court should take into consideration the surrounding circumstances and any factors which tend to shed light on what the parties intended. *City of Memphis for Use and Benefit of State v. Moore*, 818 S.W.2d 13, 16 (Tenn. Ct. App. 1991); 76 C.J.S. Reformation of Instruments § 28 (1972). We conclude that the Trial Court did not abuse its discretion when it determined that the testimony at issue was relevant to show that the parties had intended for the Tract to be part of the land sold to Jeffries. While clearly not conclusive on this issue, it is relevant.

Gamble also argues that the Trial Court erred in denying Gamble's motion for summary judgment filed prior to trial and further erred when it concluded there had been a mutual mistake entitling Jeffries to reformation of the deed. The main issue to be decided by the Trial Court was whether the parties intended for the Tract to be part of the land sold to Jeffries. If it was, then the parties were operating under a mutual mistake regarding the accuracy of the plat and deed. This was a factual determination. As to any factual conclusions made by the Trial Court regarding what

transpired between the parties and what they intended to buy or sell, these conclusions are based in large part on witness credibility. The Trial Court had the opportunity to observe both the parties and their witnesses, as well as the manner and demeanor of those who actually testified at the trial. The Trial Court's factual determination involving witness credibility will be given great weight on appeal. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 448 (Tenn. Ct. App. 1991)(citing *Town of Alamo v. Forcum-James Co.*, 205 Tenn. 478, 327 S.W.2d 47 (1959)). As recently noted by this Court in *Rice v. Rice*, 983 S.W.2d 680, 682 (Tenn. Ct. App. 1998):

> [O]n an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary.

In order to reform a written instrument because of a mistake, there must have been either a mutual mistake, or a mistake of one party influenced by the other party's fraud. *Williams v. Botts,* 3 S.W.3d 508, 509 (Tenn. Ct. App. 1999). "A 'mistake' is an act which would not have been done, or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mental incompetence, surprise, misplaced confidence, or imposition, and it must be mutual or fraudulent." *Id.* at 509-510. Before an instrument may undergo reformation for mistake, the evidence must be clear, cogent, and convincing. *See, e.g., Charton v. Burgess*, 1989 WL 105655 at *3 (Tenn. Ct. App. 1989).

After reviewing the entire record in this case, we do not believe that the evidence preponderates against the Trial Court's findings and conclusion that Jeffries had proven by clear and convincing evidence that the parties intended for the Tract to be part of the property purchased by Jeffries. The parties were, therefore, operating under a mutual mistake as to the accuracy of the deed. "If the deed fails to express correctly the contract made, the court will reform the instrument to conform to the real intention of the parties." *Charton v. Burgess*, 1989 WL 105655 at *3 (Tenn. Ct. App. 1989). Based on the Trial Court's factual conclusion, which we affirm, Jeffries was entitled to reformation of the deed. In light of this conclusion, Gamble's argument that the Trial Court erred in denying her motion for summary judgment is without merit as the vast majority of the proof submitted on behalf of Jeffries at trial was also submitted in affidavits in opposition to the motion for summary judgment.

Gamble's remaining argument is that Jeffries is estopped from denying the accuracy of the deed because the boundaries established in the deed were utilized by Jeffries in subdividing the property when she sold a portion of the land to her son. The testimony by Jeffries was that she attempted to resolve this matter amicably by informing Gamble of the mistake in the deed and paying for the additional land since the purchase price did not reflect the .61 acre Tract. When this proved unsuccessful, she filed suit to reform the deed. At the time the property was sold to her son, the boundary lines were as reflected in Jeffries' deed, even though they were incorrect due to a mutual mistake by the parties. Even though the deed was wrong, it was, nevertheless, signed and recorded. We do not believe that the equitable doctrine of estoppel required Jeffries to subdivide her

property based on what she believed the correct boundary line to be when selling a portion of the land to her son. This is even more apparent since: 1) litigation to reform the deed had not yet been completed and there was no judicial conclusion that Jeffries was entitled to reformation of the deed; and 2) Gamble was not involved in the sale of land from Jeffries to her son. This argument is without merit.

## **Conclusion**

The judgment of the Trial Court is affirmed. This case is remanded to the Trial Court for further proceedings as may be required, if any, consistent with this Opinion, and for collection of costs below. Costs of appeal are taxed to the Appellants Irene Gamble and Roma Lois Gamble and their surety.

_____
D. MICHAEL SWINEY