Behrouz AMINI

v.

CTI, INC., et al.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

July 13, 2005 Session.

Sept. 13, 2005.

Permission to Appeal Denied by
Supreme Court Feb. 21, 2006.

Behrouz Amini, pro se Appellant.

J. Chadwick Hatmaker and Robert L. Vance, Knoxville, Tennessee, for the Appellees CTI, Inc., James Kelly Milam, and Terry Douglass.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

## OPINION

Behrouz Amini ("Plaintiff") was employed at CTI, Inc., for over six years when his employment was terminated in January of 1999. Plaintiff claims that after he was terminated, the defendants prohibited him from taking various documents and other items of his property including two written stock option agreements he received while employed by CTI, Inc. Plaintiff claims that the defendants converted various items of his personal and professional property, including his stock option agreements. Plaintiff had ninety days to exercise his stock options after his employment was terminated, but claims he did not exercise these rights because the defendants had converted the stock option agreements which detailed these rights. The Trial Court granted the defendants' motion for summary judgment. We affirm in part, vacate in part, and remand for further proceedings.

### Background

Plaintiff became employed in 1992 as a senior research scientist for CTI, Inc., a corporation now known as CTI Molecular Imaging, Inc. ("CTI"). According to Plaintiff, CTI is composed of two main departments, the Cyclotron or RDS department and the Scanner department. The Cyclotron and Scanner departments together create a medical device known as Positron Emission Topography, or PET. One of Plaintiff's primary job duties was to take care of the ion source which ran the Cyclotron.

During the course of Plaintiff's employment, CTI granted him two options to purchase company stock. The first stock option was dated July of 1993 and gave Plaintiff the right to purchase 1,115 shares of stock at a purchase price of $18.00 per share. This stock option provided that Plaintiff had until July 12, 2000, in which to exercise the option. The second stock option was dated December of 1997 and gave Plaintiff the right to purchase an additional 1,700 shares of stock at the same price of $18.00 per share. The second stock option gave Plaintiff until December 12, 2004, in which to exercise the option. Both stock options detailed the procedure necessary for Plaintiff to follow to exercise the stock options and further provided that:

> All rights to exercise options granted under this Agreement terminate three months after the Employee ceases to be an employee of the Company or one of its subsidiaries for any reason other than death.

Plaintiff's employment with CTI was terminated on January 15, 1999. Plaintiff thereafter filed this suit against CTI Pet Systems, Inc. ("CPS"), CTI, Inc., James Kelly Milam, and Terry Douglass ("Defendants"). James Kelly Milam ("Milam") was Plaintiff's supervisor and a Vice President of CTI. Terry Douglass ("Douglass") was CTI's President and Chairman of the Board. In his complaint, Plaintiff alleged

that he had various items of his personal property in his office which he was not permitted to retrieve when his employment was terminated, and that these items subsequently were converted by Defendants. Plaintiff also alleged:

> Prior to his termination from the CTI defendants, the Plaintiff had submitted two articles for publication under CTI's name. Additional work was needed to make these articles publishable. The Plaintiff received materials from the defendants to do the additional work and make these articles publishable. The Plaintiff completed the work and the articles were published but the CTI defendants have refused to pay the Plaintiff for his time in completing those articles. In addition, the Plaintiff accumulated stock options while employed by the defendants. These options were given to employees as an incentive to sign on as full time employees or as a bonus. Defendants CTI are refusing to acknowledge these options.

Plaintiff later amended his complaint to allege that Defendants had improperly converted his stock options.

Defendants answered the complaint generally denying any liability to Plaintiff, and thereafter filed a motion for summary judgment. The Trial Court ruled on Defendants' motion for summary judgment as follows:

> 1. Defendants' Motion for Summary Judgment on Plaintiff's claim for conversion of stock options is **GRANTED** and said cause of action is dismissed with prejudice;

> 2. Defendants' Motion for Summary Judgment on all of Plaintiff's claims against CTI PET Systems, Inc. ("CPS"), James Kelly Milam and Terry Douglass is **GRANTED** and all of those claims are dismissed with prejudice;

> 3. Defendants' Motion for Summary Judgment on Plaintiff's claim that CTI wrongfully refused to pay him for revising two articles is **DENIED;** and

> 4. Defendants' Motion for Summary Judgment on Plaintiff's claim that CTI converted his technical materials is **DENIED.**

After the Trial Court issued its ruling, Plaintiff filed a motion requesting permission to file an interlocutory appeal pursuant to Tenn. R.App. P. 9. Plaintiff sought review of the Trial Court's judgment to the extent it partially granted Defendants' motion for summary judgment. After the Trial Court granted Plaintiff's request for permission to file a Rule 9 interlocutory appeal, Plaintiff filed a similar request with this Court. We denied Plaintiff's request for a Rule 9 interlocutory appeal as to the Trial Court's grant of summary judgment to CTI PET Systems, Inc. However, we granted a Rule 9 interlocutory appeal as to the Trial Court's grant of summary judgment on Plaintiff's claim for conversion of stock options, as well as the grant of summary judgment on all claims against Milam and Douglass.

We will discuss additional facts only as they pertain to the specific issues presented in this interlocutory appeal. Accompanying Defendants' motion for summary judgment was the affidavit of Anne Sale ("Sale"), CTI's Corporate Tax and Administration Manager. In her affidavit, Sale stated that Plaintiff had three months after his employment was terminated in which to exercise his stock options. According to Sale:

> Dr. Amini's employment with CTI was terminated effective January 15, 1999. Dr. Amini has never exercised his stock options pursuant to the July 12, 1993 or December 12, 1997 Incentive Stock Option Agreements. Specifically, Dr. Amini has never given written notice to CTI

of any intention to exercise any of his stock options, nor has he paid the Purchase Price for any such stock, as required by the terms of the Incentive Stock Option Agreements.

Plaintiff filed an affidavit in response to Defendants' motion for summary judgment. In his affidavit, Plaintiff stated that after he was informed of his termination he told Karen Davies ("Davies") that he would return to the company at 1:00 p.m. to begin cleaning out his office. When Plaintiff returned to CTI that afternoon, he found the power to his computer shut off. He began to sort through materials in his filing cabinets. Plaintiff stated that Davies immediately informed him that he was not allowed to take any material with handwriting on it, nor was he allowed to go through the materials in his filing cabinets. If there was any disagreement regarding whether certain property belonged to Plaintiff or CTI, then that particular property was set aside as disputed material. Plaintiff was supposed to discuss this property with Milam, but Plaintiff "never saw these disputed materials again." After leaving with what little he could on the day his employment was terminated, Plaintiff informed Davies he would return in two days to retrieve more of his belongings. When Plaintiff returned two days later, there were several "half empty boxes" of his property which had been gathered and placed near the front door. Plaintiff placed these boxes in his automobile and left the premises.

With regard to the written stock options, Plaintiff's affidavit states, *inter alia:*

18. My two "Incentive Stock Option Agreements" and my documents explaining my company benefits were stored in my personal property in my office on the premises of CTI up until the time I was terminated. I did not remove them from my office. On January 15, 1999 Defendants took possession of my two Stock Option Agreements along with my other property and possessions identified in *Plaintiff's Exhibit A* attached hereto. My two Stock Option Agreements were among the items that were not returned to me after my offices were raided. Neither Kelly Milam nor any other CTI representative have ever returned to me my two "Incentive Stock Option Agreements".

19. Soon after I was terminated, beginning on or about January 22, 1999, during phone conversations I asked Kelly Milam to return my personal property: my documents explaining employee rights, and I told him specifically that I needed my stock options and related documents. I wanted to know whether I could immediately exercise my stock options. I had all the intention and means to exercise my stock options. Kelly Milam told me that I should have exercised my stock options while I was an employee. He told me that when I was out I lost all my rights, I had no rights, "when you are out you are out", and he responded, "It's all gone" when I inquired about my personal property and my stock options. Kelly Milam also referred to the expression of my benefits, as "water under the bridge". Milam made me believe that based on company rules a terminated employee had basically no rights or benefits.

* * * *

21. After invading my office, Kelly Milam and CTI unilaterally decided which of my property in my office at CTI premises would be kept by the company and what would be returned to me. My two "Incentive Stock Option Agreements" and my employees' other rights and benefits that I kept in my office were among the very many documents that were not returned to me. Due to

Milam's false word and my not having possession of my stock options I was not aware that I had one day much less ninety (90) days to exercise my rights to buy company stock, or that there was a requirement for written notice within ninety (90) days of my termination to exercise my right to purchase company stock. The first time that I saw these "Incentive Stock Option Agreements" [after I was terminated] was on or about April 2002, when my counsel showed them to me attached to the Defendants' Motion to Dismiss my claims, 3 years and 3 months after my request for them was denied by Kelly Milam. I would have exercised my stock options timely, had I known that I had 90 days.

With regard to Plaintiff's claims against Milam and Douglass individually, Plaintiff admitted at his deposition that he had no proof that Douglass or Milam personally went through his office or that they took any of his possessions. Concerning Plaintiff's claim that he should be compensated for his post-termination work on the articles, Plaintiff admitted he had no agreement with Douglass or Milam regarding compensation for this work. Plaintiff further admitted that it was CTI who should compensate him for working on the articles. Plaintiff added, however, that Milam knew Plaintiff's request was "fair and he could have paid and he just didn't pay, approve for this payment."

As noted previously, the only issues presented in this interlocutory appeal surround the propriety of the Trial Court's grant of summary judgment dismissing altogether Plaintiff's claim for conversion of stock options, as well as the grant of summary judgment on all claims to Milam and Douglass individually.

### Discussion

In *Blair v. West Town Mall,* our Supreme Court recently reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. *Blair v. West Town Mall,* 130 S.W.3d 761 (Tenn.2004). In *Blair,* the Court stated:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Staples v. CBL & Assoc., Inc.,* 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Staples,* 15 S.W.3d at 88.

> \* \* \*

> When the party seeking summary judgment makes a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evi-

dence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Blair,* 130 S.W.3d at 763–64, 767 (quoting *Staples,* 15 S.W.3d at 88–89).

■ Our Supreme Court also has provided instruction regarding assessing the evidence when dealing with a motion for summary judgment, stating:

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210–11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995).

*Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn.2000). It is important to note that simply demonstrating that a plaintiff cannot prove an essential element of his or her case is not a sufficient basis for granting a motion for summary judgment. *See Hill v. Sneed,* No. E2004–00102–COA–R3–CV, 2004 WL 2346005, at *4, 2004 Tenn. App. LEXIS 673, at *12 (Tenn.Ct.App. Oct.18, 2004), *no appl. perm. appeal filed,* ("[I]t is clear to this Court that under *Blair v. West Town Mall, supra,* merely showing that a plaintiff will be unable to prove an essential element of his or her case is not a sufficient basis for obtaining summary judgment.").

■ With regard to Plaintiff's claim that Defendants improperly converted his stock options, Defendants argue that stock options are intangible property rights and because of this, they cannot be converted. This argument misses the point because Plaintiff's claim for conversion is actually two-fold. While Plaintiff does claim his stock option rights were converted, he also claims that the actual documents granting him those rights were converted. Plaintiff further claims that because the actual documents were converted by Defendants, he was unable to ascertain any existing rights that he may have had and, as a result, he did not know he had ninety days to exercise his stock options. In short, Plaintiff claims that if Defendants are correct and that the time long ago ran for him to exercise his stock options, the reason he failed to exercise his stock options is because the Defendants converted the actual stock option documents and it was this conversion of the actual documents which prevented Plaintiff from being able at that time to read the documents to determine what his rights as far as exercising the stock options actually were.

■ Defendants further claim that Plaintiff must be charged with knowledge of the contents of the stock option agreements and that he had only ninety days post-termination to exercise his rights. In other words, because Plaintiff did not timely exercise the rights which he should have been aware of, summary judgment on this claim was appropriate. We might agree with Defendants if Plaintiff had been allowed access to these documents or to otherwise retain possession of them. However, according to Plaintiff, he was physically prevented from obtaining these documents and this is what resulted in his

not knowing his rights and the eventual lapse of the ninety-day time limit. We would be hard pressed to charge Plaintiff with knowing the precise language of documents that were several years old and which were taken and kept from him, a fact that at least at this summary judgment stage is in dispute. While we are fully aware that a party cannot use as a defense his claim that he did not know the contents of a contract because he did not bother to read it before signing it, we are aware of no rule of law that says once a party signs a contract he is charged with remembering all the terms of that contract and is not allowed to read it again sometime in the future to ascertain what his contractual rights and obligations are at that time. A contract is not a memory test.

When viewing the evidence in the light most favorable to Plaintiff, Defendants' argument is without merit at this summary judgment stage of the proceedings. Regardless of whether the stock options themselves were tangible or intangible rights, Plaintiff nevertheless has established the existence of a genuine issue of material fact as to whether Defendants improperly converted Plaintiff's physical documents titled "Incentive Stock Option Agreements" and whether this conversion prevented him from timely exercising his rights under the Agreements. The Trial Court's grant of summary judgment to Defendants on this claim is, therefore, vacated.[1]

■ The next issue involves whether the Trial Court correctly granted summary judgment to Milam and Douglass on Plaintiff's claim for conversion of his technical and scientific documents and property in addition to his stock options. As set forth above, Plaintiff alleges that Milam and Douglass converted various items of personal and professional property, including, but not limited to, various documents including the Incentive Stock Option Agreements and technical materials belonging to Plaintiff.

Milam's and Douglass' motion for summary judgment relied on Plaintiff's deposition testimony and argued that Plaintiff could not prove they were the ones who converted the property, assuming any conversion took place. Noticeably lacking from the motion for summary judgment are any affidavits from Milam or Douglass stating that they did not convert any of Plaintiff's property. In other words, they claim only that Plaintiff "will be unable to prove an essential element of his ... case" which is insufficient to support a grant of summary judgment. *Hill v. Sneed, supra.* Without an affidavit from Milam or Douglass stating that they did not convert any of Plaintiff's property, they failed to negate any essential element of Plaintiff's claim or conclusively establish any affirmative defense. It necessarily follows that Plaintiff's burden to produce evidence establishing the existence of a genuine issue of material fact never was triggered. *See Blair,* 130 S.W.3d at 767 (quoting *Staples,* 15 S.W.3d at 88–89). We likewise are unpersuaded by Milam's and Douglass' innovative argument that summary judgment was appropriate to them because

---

1. Since Plaintiff alleged the actual documents were improperly converted, it makes no difference whether the stock option rights themselves were intangible and subject to being converted under the law. If, on remand, Plaintiff can prove that the documents were converted and because of the conversion he did not exercise the stock options in a timely manner, then Plaintiff's damages would be the same as they would be if he could set forth a claim for conversion of the actual stock options. Therefore, we express no opinion on whether stock option rights are tangible or intangible, or whether they can be converted.

even if they converted Plaintiff's stock options or other property, they converted it not for their own use and benefit but for the use and benefit of CTI which somehow shields them from liability for their alleged conversion. Milam and Douglass cite us to no law in support of this proposition, and we are unaware of any such law mandating such a result. The grant of summary judgment to Milam and Douglass individually on Plaintiff's claim for conversion is, therefore, vacated.[2]

■ The final issue is whether the Trial Court properly granted summary judgment to Milam and Douglass on Plaintiff's claim for post-termination compensation for work performed completing two articles. Plaintiff admitted in his deposition that this claim really was against his employer, CTI, and that he had no agreements with Milam or Douglass individually. Although Plaintiff claimed Milam knew his request for payment was fair, that is not a sufficient basis in which to hold Milam personally liable. Given that Plaintiff admits this claim is brought properly against only his employer CTI, we affirm the Trial Court's grant of summary judgment to Milam and Douglass on this particular claim.

### Conclusion

The judgment of the Trial Court is affirmed in part and vacated in part, and this cause is remanded to the Trial Court for further proceedings as necessary and consistent with this Opinion and for the collection of the costs below. Costs on appeal are assessed equally against the Appellees

CTI, Inc., James Kelly Milam, and Terry Douglass.

---

**2.** The Trial Court entered an Order on August 2, 2002, stating that technical records, computer programs, and other similar items which were created during the course of Plaintiff's employment were the property of CTI pursuant to CTI's Guidelines for Protection of Confidential and Proprietary Information. Our ruling applies to property not covered by this Order and should not be interpreted otherwise.