IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020

## DEBORAH CHRISTINE MOORE v. LARRY GENE MOORE

**Appeal from the Circuit Court for Knox County**
**No. 135230   Gregory S. McMillan, Judge**

_____

### No. E2019-00503-COA-R3-CV

_____

The parties entered into a mediated agreement, which was incorporated into their divorce judgment. Following the entry of the judgment, Husband filed a timely motion to alter or amend the parties' agreement, alleging a mutual mistake. The trial court granted the motion and reformed the agreement to impose additional obligations on Wife. Following our review, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which RICHARD H. DINKINS and THOMAS R. FRIERSON, II, JJ., joined.

Thomas M. Leveille, Knoxville, Tennessee, for the appellant, Deborah Christine Moore.

Vanessa Samano, Knoxville, Tennessee, for the appellee, Larry Gene Moore.

## OPINION

### BACKGROUND

On October 29, 2015, Plaintiff/Appellant Deborah Christine Moore ("Wife") filed a complaint for divorce against her husband of over thirty years, Defendant/Appellee Larry Gene Moore ("Husband"). The complaint alleged both irreconcilable differences and Husband's inappropriate marital conduct. Husband thereafter filed an answer and counter-complaint on November 5, 2015.

Mediation occurred on April 5, 2016. During mediation, the parties successfully resolved all issues and agreed to sign a final judgment for divorce. The trial court entered

a final judgment of divorce on April 15, 2016. The order indicated that the parties had come to an agreement as to the division of marital property, that the division was "fair and equitable," and that the trial court "adopts same as the order of this Court." Relevant to this appeal, the following agreed upon provision was included in the divorce judgment:

> [Wife] shall be awarded all monetary accounts in her sole name, including but not limited to, bank accounts, 401k accounts, pensions, IRAs, retirement accounts, etc. as her sole property. [Husband] shall be awarded all monetary accounts in his sole name, including but not limited to, bank accounts, 401k accounts, pensions, IRAs, retirement accounts, etc. as his sole property.

Other assets were specifically named and divided; neither party was awarded alimony.

Less than thirty days later, Husband filed a motion to alter or amend the final judgment of divorce pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure. Therein, Husband asserted that the parties had made a mutual mistake of fact "with respect to the pension asset" and that "the parties need an opportunity to reevaluate the assets and file an amended asset distribution." In support, Husband alleged that following the filing of the divorce judgment, he was advised that he was not allowed to remove Wife as a beneficiary under his Knox County Retirement & Pension Board plan account. According to Husband, he was not aware of this situation at the time the mediated agreement was reached. Husband asked that the court alter or amend its judgment or set the judgment aside.

The trial court held an evidentiary hearing on Husband's motion on November 17, 2017. Both parties testified. There was no dispute that Husband retired in 2008, well before the divorce proceedings. Among the evidence submitted was a September 2008 Beneficiary Designation form designating the beneficiaries of Husband's pension. Wife is listed as primary beneficiary, while Husband's daughter was listed as contingent beneficiary; however, hand-written next to each name is the designation "50%." Listed later on the form are certain options as to how the pension would be administered, including Option A, which contained six sub-options. Immediately following the Option A category was the following statement, underlined and bolded: "**Beneficiary cannot be changed after retirement**[.]"[1] The form noted that beneficiaries could be changed if Options B or C were chosen. Husband testified that he executed this form, choosing Option A-1. Beneath the Option A-1 description is a handwritten notation that there are "2 beneficiaries" consistent with the 50% designation discussed above. According to

---

[1] The exhibit of this document contained in the record contains hand-written notations that make this exact wording of this statement unclear. Husband's testimony confirmed that this was the wording used on the document. It is possible the wording is actually: **"Beneficiary(ies) cannot be changed after retirement**[,]" as this is the wording which more closely conforms to the terms used with regard to the other options. The exact phrasing of the document is immaterial to this appeal.

Husband, however, he never read any of the provisions related to his inability to change his beneficiary post-retirement.

Wife likewise testified that she was unaware that the beneficiary of Husband's pension could not be changed in 2008 when the form was executed, in 2016 when the divorce was mediated, or at any time thereafter. Wife testified that her understanding of the divorce decree was that "he would take his stuff and I would take mine."

On February 27, 2019, the trial court entered an order granting Husband's motion to alter or amend. The trial court first found that the intent of the parties was to disclaim any interest in the other spouse's retirement benefits. To effectuate that intent, the trial court ruled as follows:

> If [Wife] receives her 50% of [Husband's] Knox County Retirement & Pension Board (hereinafter "pension"), she will pay the net amount after her taxes for that income to Husband's] daughter . . . . Therefore, [Wife] is effectively disclaiming her interest in [Husband's] pension as she agreed to do under the parties' Final Judgment of Divorce, but [Wife] is not going to be penalized by having to pay taxes on the amount she's not actually receiving. [Wife] will be able to withhold the actual taxes that she incurs as a result of getting it and [Husband's] daughter will get the same amount.

The trial court further ruled that if Husband's daughter predeceases him, Wife would be entitled to receive all of the pension benefits. Wife thereafter appealed to this Court.

### ISSUES PRESENTED

Wife raises two issues on appeal, which we summarize and restate as a single issue: whether the trial court erred in granting Husband's motion to alter or amend the divorce judgment, based on the parties' mediated agreement, as it relates to Husband's pension.

In the posture of appellee, Husband argues that the trial court erred in allowing Wife to retain any portion of his pension benefits.

### STANDARD OF REVIEW

This appeal involves the trial court's decision to partially grant Husband's motion to alter or amend the final divorce judgment under Rule 59.04 of the Tennessee Rules of Civil Procedure. Rule 59.04 provides that motions to alter or amend judgment may be filed within thirty days of the entry of an otherwise final judgment. "The purpose of Tenn. R. Civ. P. 59 motions is to prevent unnecessary appeals by providing trial courts with an opportunity to correct errors before a judgment becomes final." *Bradley v. McLeod,* 984 S.W.2d 929, 932 (Tenn. Ct. App. 1998). "Rule 59 can provide relief from a judgment due to mistake, inadvertence, surprise, or excusable neglect." *Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship*, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009) (comparing Rule 59.04 to Rule 60.02 allowing relief from final judgments).

A motion to alter or amend "'may be granted (1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice.'" *Vaccarella v. Vaccarella,* 49 S.W.3d 307, 312 (Tenn. Ct. App. 2001) (quoting *Bradley v. McLeod,* 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998)). The purpose of a motion is to "'allow[] the trial court to correct any errors as to the law or facts that may have arisen as a result of the court overlooking or failing to consider matters.'" *Vaccarella,* 49 S.W.3d at 312 (quoting *Chadwell v. Knox County*, 980 S.W.2d 378, 383 (Tenn. Ct. App. 1998)). The only ground at issue in this case apparently involves the need to correct an error or prevent an injustice.[2]

A trial court's decision to grant or deny a motion to alter or amend is reviewed for an abuse of discretion. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). An abuse of discretion occurs it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001). We will not overturn the trial court's decision merely because reasonable minds could reach a different conclusion. *Id.*

## DISCUSSION

### I.     Contract Interpretation

The central dispute in this case involves whether the trial court correctly granted Husband's Rule 59 motion to alter the divorce judgment based on his inability to remove

---

[2] Importantly, Husband does not allege that the trial court overlooked certain evidence or made a mistake based on the proof presented, as evidence concerning Husband's inability to change his retirement beneficiaries was not presented to the trial court prior to the entry of the divorce judgment. From our review of the parties' arguments, the "mistake" alleged by Husband is not specifically directed toward avoidance of the judgment under Rule 59.04, but avoidance of the parties' contract under the doctrine of reformation, discussed in detail, *infra*. Indeed, neither party devotes much argument to the issue of what ground Husband was citing in support of his effort to alter or amend the trial court's judgment. In our estimation, Husband's motion comes perilously close to seeking to put on new evidence, as he is endeavoring to change the trial court's decision based on evidence that was not previously presented. The problem, of course, is that, as we note later in this opinion, Husband's evidence was not newly discovered. *Cf. Jones v. Jones*, No. M2012-02558-COA-R3-CV, 2013 WL 5433046, at *5 (Tenn. Ct. App. Sept. 24, 2013) (affirming the denial of a motion to alter or amend where the party seeking relief had all of the information available to her prior to the entry of the final judgment). A clear trend has not emerged in this Court as to whether the more stringent newly discovered evidence rule or the more lenient balancing test should be used when considering a motion to modify an otherwise final judgment under Rule 59.04. *See Simpson v. Simpson*, No. E2018-01686-COA-R3-CV, 2019 WL 2157937, at *10 (Tenn. Ct. App. May 17, 2019) (discussing the different approaches taken by this Court as to this issue). Again, both parties confine their arguments in terms of contract reformation, rather than the question of whether the requirements for Rule 59.04 relief have been met. As such, we will not further address this issue.

- 4 -

Wife as a beneficiary from his retirement benefits. Husband contends that the trial court was correct in altering the judgment so as to require Wife to remit the payments made to her under the retirement plan to Husband's daughter, preserving the parties' intent that Wife would not share in Husband's benefits. Thus, Husband contends that the trial court did not abuse its discretion in requiring Wife to make payments to Husband's adult daughter should he predecease Wife. Additionally, Husband contends that the trial court erred in not extending its ruling to require Wife to remit payments back to his estate should both Husband and his daughter predecease Wife. In contrast, Wife contends that Husband failed to meet his burden to obtain post-judgment relief under the facts of this case.

Although the parties disagree on many aspects of this case, there is one aspect that they agree on—that this appeal should be governed by contract principles.[3] Indeed, neither party disputes that the terms of the mediated agreement, which were announced to the court and incorporated into its divorce judgment, should be enforced like any other contract. *Cf. Persada v. Persada*, No. E2002-00397-COA-R3-CV, 2002 WL 31640564, at *2 (Tenn. Ct. App. Nov. 22, 2002) (holding that a mediated settlement in a divorce is a valid contract when it is announced to the court and approved). As we have previously explained:

> The courts must interpret contracts as they are written, and are not at liberty to make a new contract for parties who have spoken for themselves[.] Accordingly, the courts do not concern themselves with the wisdom or folly of a contract, and will not relieve parties from contractual obligations simply because they later prove to be burdensome or unwise[.]

*Sikora v. Vanderploeg*, 212 S.W.3d 277, 286 (Tenn. Ct. App. 2006).

Both parties first assert that the plain language of the contract should be interpreted to support their position. For his part, Husband contends that the trial court

---

[3] Because this case involves a divorce, the trial court had discretion to enter a divorce decree based on its judgment, notwithstanding the agreement of the parties. As we recently reaffirmed,

> Divorce is not a creature solely of contract between spouses. Rather, this Court has explained that a divorce action is really a triangular proceeding where in addition to the parties the State through the court is a quasi party. In its role as a quasi party to divorce proceedings, the court must examine each marital dissolution agreement and make an independent determination that it is equitable and legally sufficient pursuant to the mandates of the applicable divorce statutes.

*Pless v. Pless*, No. M2018-02047-COA-R3-CV, 2019 WL 4757621, at *5 (Tenn. Ct. App. Sept. 30, 2019), *perm. app. denied* (Tenn. 2020) (citations, alterations, and quotation marks omitted). No party has asserted that the trial court did so in this case, nor does either party raise this duty of the trial court in support of their position on appeal. It is not the duty of this court to construct a litigant's case for him or her. *See Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010). As such, we review this case solely on contract principles briefed by the parties.

merely interpreted the mediated agreement so as to effectuate the intent of the parties. Respectfully, we cannot agree.

It is well-settled that courts "may not make a new and different contract for the parties that they did not intend to make for themselves." *Ament v. Wynne*, No. M2004-01876-COA-R3-CV, 2007 WL 2376333, at *5 (Tenn. Ct. App. Aug. 20, 2007) (citing *Humphries v. West End Terrace, Inc.,* 795 S.W.2d 128 (Tenn. Ct. App. 1990)). As such, courts are not permitted to "make new contracts for the parties under the guise of unwarranted interpretation." *Id.* (citing *Rogers v. First Tenn. National Bank Association,* 738 S.W.2d 635 (Tenn. Ct. App. 1987)). We must therefore construe contracts "fairly and reasonably, and we should avoid rewriting these agreements under the guise of "construing" them." *Id.* (citing *Elliott v. Elliott,* 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004)). In other words,

> In the absence of grounds for reformation, a contract must be construed exactly as written. The courts are not at liberty to make a new contract for the parties, and thus may not rewrite the contract or add or delete terms by construction or under the guise of interpretation. A court may not, under the guise of interpretation, impose obligations not actually assumed by the parties, and the rule of liberal construction is not a justification for doing so.
>
> A court may not rewrite a contract for the purpose of accomplishing that which, in its opinion, appears proper.

17A C.J.S. *Contracts* § 408 (footnotes omitted).

A cursory review of the parties' agreement and the trial court's judgment following Husband's motion to alter or amend demonstrates that the trial court did more than simply construe the agreement. Here, the agreement indeed provides that both parties will be awarded their own retirement accounts. The agreement is silent, however, as to how each party is to accomplish this result. The trial court therefore placed new obligations on Wife that it felt was proper in order to effectuate the parties' intent. This goes beyond mere contract interpretation. Husband's argument that the trial court's judgment should be affirmed as mere contract interpretation therefore lacks merit.[4]

---

[4] Wife makes a similar argument, which we also reject. Specifically, Wife contends that

> Because the language of the Final Judgment was unambiguous and the evidence before the trial court showed that the right to 50% of the pension payments was in the sole name of the Wife payable to her after the Husband's death, the trial court was in error in ruling that the Wife was required to pay any future payments received by her to the Husband's daughter.

Respectfully we cannot agree. The term "sole" generally means "single [or] only[.]" *Houston v. Embry*, 33 Tenn. 480, 482 (1853). Only a tortured definition would include Wife's contingent and partial interest

- 6 -

## II.    Reformation

In the alternative, Husband contends that the trial court correctly reformed the parties' agreement due to a mistake. In support, Husband presented evidence that he could not change the beneficiary of his retirement benefits to exclude Wife following his death and asked the trial court to alter its judgment to ensure that Wife would not receive the benefit of his retirement benefits, as had been contemplated in the parties' agreement. Wife contends the trial court erred in altering the parties' mediated agreement to add additional terms because Husband did not meet his burden to set aside the agreement on the ground of mistake.

As previously discussed, the law favors holding parties to their contracts. However, "the law's strong policy favoring the enforcement of contracts as written must occasionally give way[,]" resulting in two doctrines that allow a party to alter or avoid a contract: rescission and reformation.

As the Tennessee Supreme Court has explained:

> In accord with the general principle that rescission is not favored in Tennessee, we have held that a consent order cannot be set aside unless entered through fraud or mistake. This Court has explained that a "mistake" exists in a legal sense when a person, acting on an erroneous conviction of law or fact, executes an instrument that he or she would not have executed but for the erroneous conviction. A court may not rescind a contract for mistake unless the mistake is innocent, mutual, and material to the transaction and unless the complainant shows an injury.

***Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.***, 320 S.W.3d 252, 261 (Tenn. 2010) (citations omitted). Thus, in order to rescind a contract, the party seeking rescission must generally show a mutual mistake and an injury.[5] *Id. But see **Heaton v. Heaton***, No. E2013-01985-COA-R3-CV, 2014 WL 4267461, at *7 (Tenn. Ct. App. Aug. 29, 2014)

---

in Husband's retirement accounts under this definition.

[5] Importantly, the injury asserted by Husband in this case does not result from his inability to retain his retirement benefits during his lifetime, but due to the possibility that Wife will retain some or all of his retirement benefits after his death, at odds with Husband's desire that his daughter or other chosen beneficiaries retain the entirety of the benefits. Husband's injury is therefore minimal. Indeed, it appears that the person most injured by the alleged mistake in this case is daughter. Husband's daughter, however, was never made a party to this case. Neither party has asserted, either at trial or on appeal, that Husband's daughter was indispensable to this case. *See generally* Tenn. R. Civ. P. 19.01 (providing specific rules for when necessary parties should be joined in an action to effectuate full relief). *But see **Adkins v. Bluegrass Estates, Inc.***, 360 S.W.3d 404, 415 (Tenn. Ct. App. 2011) (holding that a claim that certain parties were necessary to full adjudication can be waived if not properly and timely raised). Generally, however, "'the only proper parties to a marital dissolution proceeding are the spouses.'" ***Pruitt v. Pruitt***, No. W2018-00453-COA-R3-CV, 2019 WL 450416, at *5 (Tenn. Ct. App. Feb. 5, 2019) (quoting 27A C.J.S. *Divorce* § 174).

(citing **Hearne v. Marine Ins. Co.,** 87 U.S. 488, 491, 22 L.Ed. 395 (1874) (holding that "a mistake on one side may be a ground for rescinding, but not for reforming, a contract")).

Although Husband vaguely asked to "set aside" the trial court's divorce judgment, it is clear from his motion, the arguments of counsel at the hearing, and his brief, that the relief he sought in the trial court was not for the trial court to dispose of the parties' judgment in toto and have a de novo divorce hearing, but for the trial court to reform the parties' contract to ensure that Wife could retain no part in his retirement benefits. The trial court denied any ostensible effort to rescind the contract, and Husband has not assigned that ruling as an error on appeal. *See* **Forbess v. Forbess**, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (holding that the appellee waived an issue by his failure to designate it as an issue in his statement of the issues). As such, it appears that reformation, rather than rescission, is the central focus of this appeal.

This Court has explained the concept of reformation thusly:

> The judicial alteration of the provisions of a written agreement is an equitable remedy known as "reformation." **Greer v. J.T. Fargason Grocer Co.,** 168 Tenn. 242, 244–45, 77 S.W.2d 443, 443–44 (1935); **Tenn. Valley Iron & R.R. Co. v. Patterson,** 158 Tenn. 429, 433, 14 S.W.2d 726, 727 (1929). The basic purpose of reformation is to make the contract "conform to the real intention of the parties." **Lebo v. Green,** 221 Tenn. 301, 314, 426 S.W.2d 489, 494 (1968). It is "driven by a respect for the parties' intent and gives effect to the terms mutually agreed upon by the parties." 27 *Williston on Contracts* § 70:2, at 210. Because the law strongly favors the validity of written instruments, a person seeking to reform a written contract must do more than prove a mistake by a preponderance of the evidence. Instead, the evidence of mistake must be clear and convincing. **Hazlett v. Bryant,** 192 Tenn. 251, 263, 241 S.W.2d 121, 125–26 (1951); **Tenn. Hoop Co. v. Templeton,** 151 Tenn. 375, 379–80, 270 S.W. 73, 75 (1925); **Sawyer v. Sawyer,** 106 Tenn. 597, 603, 61 S.W. 1022, 1023 (1901); **Bailey v. Bailey,** 27 Tenn. (8 Hum.) 230, 233 (1847); *Restatement (Second) of Contracts* § 155 cmt. *c,* at 410.

**Sikora v. Vanderploeg**, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006) (footnotes omitted). Like rescission, "[t]o form the basis for the equitable remedy of reformation there must have been a mutual mistake or a mistake by one party induced by the other's fraud."[6] **City of Memphis for Use & Benefit of State v. Moore**, 818 S.W.2d 13, 16 (Tenn. Ct. App. 1991) (citing **Pierce v. Flynn,** 656 S.W.2d 42 (Tenn. Ct. App. 1983)).

Several concerns exist with regard to Husband's request. As an initial matter, we tend to agree with Wife that the mistake alleged by Husband has not been shown through

---

[6] There are no allegations of fraud in this case.

clear and convincing evidence to be mutual. The concept of mutual mistake "has been defined as 'one common to both parties to a contract, each laboring under the same misconception . . . respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement.'" *Steadman v. Bailey*, No. C/A 122, 1986 WL 4587, at *1 (Tenn. Ct. App. Apr. 18, 1986) (quoting 17 C.J.S. *Contracts* § 144).

Wife submits that the mistake in this case was not mutual because Husband was provided the information concerning the beneficiary changes in 2008 and voluntarily chose a retirement plan in which the beneficiaries could not be changed. Husband's argument that the issue in this case constitutes a mistake for which reformation of the contract is an available remedy is not persuasive. Husband contends that he, like Wife, was unaware at the time of the divorce that he was unable to change the beneficiary of his retirement benefits so as to exclude Wife. Tennessee law, however, charges Husband with knowledge in this situation.

In civil cases, the Tennessee Supreme Court has held that a party to a contract "'is *conclusively presumed* to have knowledge of'" a contract "'irrespective of whether the insured actually read, or could read, the [] contract.'" *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 274 (Tenn. 2001) (quoting *Gen. Am. Life Ins. Co. v. Armstrong*, 182 Tenn. 181, 186, 185 S.W.2d 505, 507 (Tenn. 1945) (involving an insurance contract)). The facts presented at the hearing on the motion to alter or amend demonstrate that Husband was provided with the contract indicating his inability to change his beneficiary post-retirement in 2008. Husband executed the documents, acknowledging that he assented to all of the terms contained therein. Husband thereafter retained the documents for his records.[7] *Cf. Amini v. CTI, Inc.*, 185 S.W.3d 415, 421 (Tenn. Ct. App. 2005) ("[W]e are aware of no rule of law that says once a party signs a contract he is charged with remembering all the terms of that contract and is not allowed to read it again sometime in the future to ascertain what his contractual rights and obligations are at that time. A contract is not a memory test.").

At least one case has considered whether a mutual mistake could serve as the basis for avoiding a contract when the party seeking relief had constructive knowledge of the mistake at the time of making the contract. *See Bowman v. Seymour*, No. 03A01-9904-CH-00158, 1999 WL 1068691 (Tenn. Ct. App. Nov. 24, 1999). In *Bowman*, the buyer of land was orally assured on multiple occasions that the land was not burdened by an easement. *Id.* at *1. After the sale, the owners of the easement informed the buyer of their right-of-way over the property. *Id.* A subsequent title search also revealed the easement burdening the property. *Id.*

The buyer then filed an action to rescind the contract on the basis of mistake. *Id.* We recognized that the buyer's constructive knowledge of the easement was an issue, but

---

[7] Specifically, Husband testified that he brought the documents home and put them on the parties' dining room table.

ultimately concluded that it did not preclude relief under the specific circumstances at issue:

> In our resolution of this case we concede that [buyer] was upon constructive notice of the right-of-way by virtue of the recorded plat which shows the right-of-way. However, we believe that the false representation made to [buyer] is sufficient to outweigh constructive notice. Moreover, it is arguable that even if [buyer] had actual notice of the right-of-way he might still be able to prevail because of [seller] representations from which he might conclude that [seller] had purchased the right-of-way from the owner of lot 14, as indeed he tried to do after this controversy arose.

*Id.* at \*3.

We concede that ***Bowman*** involved rescission rather than reformation. ***Id.*** As previously discussed, however, both forms of contract avoidance generally require mutuality of mistakes. *See **Pugh's Lawn Landscape***, 320 S.W.3d at 261; ***Moore***, 818 S.W.2d at 16. Indeed, at least one panel of this Court has suggested that the mutuality of mistake requirement is more relaxed in the rescission context than the reformation context. *See **Heaton***, 2014 WL 4267461, at \*7 (indicating that without a mutual mistake rescission but not reformation could be available). We therefore view ***Bowman's*** discussion of constructive knowledge in the context of contract rescission as equally applicable in the reformation context.

The facts in this case are not the same. Here, it is absurd to suggest that Wife made similar false representations to Husband about his own retirement accounts to induce him to enter into the mediated agreement. Indeed, the undisputed evidence shows that Wife had no knowledge of Husband's elections with regard to his retirement accounts. As such, no false representation can outweigh Husband's presumed knowledge of the contents of a contract that he entered into.

Husband's brief offers little authority to avoid the presumption of knowledge that attaches in this case. Rather, Husband only points to his lack of actual knowledge and the case of ***In re Payne***, 523 B.R. 560 (Bankr. E.D. Tenn. 2014). ***In re Payne***, however, is not analogous. In that case, parties to a bankruptcy plan finalized more than decade earlier filed a motion to modify the confirmed bankruptcy plan. ***Id.*** at 563. Specifically, the bank argued that the parties had intended to substitute certain collateral for a debt included in the plan; because that intended collateral was foreclosed on, the debtors argued that the debt should be considered unsecured. ***Id.*** The court characterized "the heart" of the case as the question of whether there was mistake concerning the parties' intended collateral for a debt, so as to make reformation of the contract available. ***Id.*** at 568. ;

Applying Tennessee law, the court explained the effect of one party's negligence on a request for reformation:

- 10 -

> [I]nattention or simple negligence is not an absolute bar to reformation. *See Alexander v. Shapard*, 240 S.W. at 292; *Sikora v. Vanderploeg*, 212 S.W.3d at 289. Indeed, if inattention alone could defeat a claim for reformation, "the remedy would almost never be available to correct typographical mistakes and scrivener's errors, because parties have a duty to read the written contracts they enter into and are ordinarily charged with knowledge of their contents regardless of whether they have actually read them." *Sikora v. Vanderploeg*, 212 S.W.3d at 290. As such, courts should only deny reformation when the party's fault in causing the error "amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." *Id.* (quoting *Restatement (Second) of Contracts* § 157 & cmt. a, at 416). If the party seeking reformation can establish the elements of a mistake in expression by clear and convincing evidence, any difference between the original agreement between the parties and the written contract is deemed a mutual mistake. *See Alexander v. Shapard*, 240 S.W. at 292–93.

*Id.* at 569–70. Applying these principles, the bankruptcy court held that the bank met its burden to show that the substitution of collateral in the finalized bankruptcy plan was a mistake. *Id.* at 571–72.

Husband offers no analysis as to how the facts in the present case are analogous to *Payne*. Importantly, *Payne* involved an allegation as to a drafting error—that the written contract did not reflect the parties negotiated agreement. *Sikora v. Vanderploeg*, the central case cited in *Payne*, also involved a drafting error. No mere drafting error is alleged in this case. Rather, the mistake involves Husband's failure to consider information, known only to him, that impacted his ability to obtain the benefit of his bargain in the divorce. Some authorities have suggested that this is not the type of mistake for which the law provides relief. *See, e.g., Mitchner v. Taylor*, 56 Tenn. App. 670, 677, 412 S.W.2d 1, 4 (Tenn. Ct. App. 1965) (quoting *Pittsburg Lumber Co. v. Shell*, 136 Tenn. 466, 189 S.W. 879, 880 (Tenn. Ct. App. 1916) (holding that a party is "not entitled to [reformation] merely because their intentions were influenced by mistaken considerations")).

Regardless, we cannot conclude that *Sikora* supports Husband's claim that his mistake results from excusable inattention. Specifically, in *Sikora*, the parties to an agreement for the purchase of a chiropractic practice sued each other for breach. In particular, one party asked for reformation of the contract because both parties agreed that the written contract did not accurately reflect the practice's billing during the stated period. The trial court nevertheless denied reformation because it ruled that the party seeking reformation should have discovered the drafting error.

The Court of Appeals reversed, holding that mere inattention or negligence in discovering a drafting error was not fatal to a claim for reformation. Rather, the court explained that

It would make little sense to impose a categorical exemption to the doctrine of mistake whenever the underlying mistake could accurately be described as resulting from "inattention" as opposed to some other cause. If inattention were enough to defeat a claim for reformation based on a mistake in expression, the remedy would almost never be available to correct typographical mistakes and scriveners errors, because parties have a duty to read the written contracts they enter into and are ordinarily charged with knowledge of their contents regardless of whether they have actually read them. Accordingly, reformation is denied only in "extreme cases" where a party's fault "amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." *Restatement (Second) of Contracts* § 157 & cmt. *a,* at 416; *accord* 27 *Williston on Contracts* § 70:48, at 345. Thus, the level of negligence required to defeat a claim for reformation based on a mistake in execution is often described as "gross negligence." *See, e.g.,* **Rentenbach Eng'g Co. v. Gen. Realty Ltd.,** 707 S.W.2d at 527; *see also* **Rotenberry v. Hooker,** 864 So.2d 266, 271–278 (Miss. 2003); 27 *Williston on Contracts* §§ 70:49, at 346, § 70:113, at 561.

A party's failure to catch a drafting error when reading over a written contract does not normally rise to the level of "gross negligence" that will bar reformation. **Rentenbach Eng'g Co. v. Gen. Realty Ltd.,** 707 S.W.2d at 527; 27 *Williston on Contracts* §§ 70:48, at 346, 70:113, at 561. This is true even where the party seeking reformation is the one who drafted the contract. **Cincinnati Ins. Co. v. Fred S. Post, Jr.,** *Co.,* 747 S.W.2d at 781; 27 *Williston on Contracts* § 70:93, at 497; **InvesSys, Inc. v. McGraw-Hill Cos.,** 369 F.3d 16, 17–18 (1st Cir. 2004) (reforming sales contract that inadvertently included rights to a software program that was not intended to be part of the deal even though a provision was added by seller's own attorney and company officials reviewed the contract prior to executing it but failed to catch the error).

*Sikora*, 212 S.W.3d at 290 (footnotes omitted). Thus, *Sikora* stands for the proposition that mere negligence does not prevent reformation on the basis of mistake.

We are not convinced, however, that Husband's failure to read a contract that he freely entered into, either at the time of execution or when the divorce was contemplated, does not rise to the level of "gross negligence." Outside of the contract context, "gross negligence" has been defined as "'a conscious neglect of duty or a callous indifference to consequences[.]'" **Buckner v. Varner**, 793 S.W.2d 939, 941 (Tenn. Ct. App. 1990) (quoting **Thomason v. Wayne County**, 611 S.W.2d 585 (Tenn. Ct. App. 1980)). Although the *Sikora* court offered little explanation of the standard to be utilized in the contract formation context, it does cite several secondary sources that are helpful. For example, *Williston on Contracts* provides that a mistake that results from not reading a

contract will not support reformation: "Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms merely by contending that the document was never read. **The general rule is that mistakes are not excused when caused by one party's failure to read a writing."** 27 *Williston on Contracts* § 70:48 (4th ed.) (emphasis added); *see also **Sikora***, 212 S.W.3d at 290 (citing section 70:48 of *Williston on Contracts* favorably). Although the typical situation involves a failure to read the contract that is sought to be reformed, we see no reason to apply a different rule when reformation is sought because a party chose not to read a contract that affects the performance under a separate contract.

Even setting aside the issue of whether the alleged mistake at issue was mutual, it does not appear that the trial court's chosen remedy was an available method of reformation. As previously discussed, courts "are not at liberty to make a new contract for parties[.]" ***Sikora***, 212 S.W.3d at 286. This principle holds true even when reformation is at issue: "The purpose of reformation by a court of equity is to make an erroneous instrument express correctly the real agreement between the parties; no court can make a new contract for them." 27 *Williston on Contracts* § 70:20 (4th ed.). Thus, Tennessee law generally follows the following guidance:

> Reformation has its limits. Equity cannot make a new contract for the parties under the guise of reforming it, or by adding a provision to which they never agreed. Another bedrock principle is that reformation is unavailable where the parties drew the instrument just as intended. In sum, the remedy does not: (1) make a new contract for the parties; (2) bring the document into conformance with an intent arising after contract formation; or (3) create a more reasonable bargain.

21 *Tenn. Prac. Contract Law and Practice* § 6:64 (footnotes omitted).

We agree with both Husband and the trial court that the clear intent of the parties' agreement was to allow each spouse to retain their own retirement benefits. As previously discussed, however, the parties never entered into any agreement as to how this was to be accomplished. In order to effectuate the intent of the parties notwithstanding Husband's "mistake" as to his own retirement benefits, the trial court chose to place additional burdens on Wife. While these obligations certainly effectuated the intent that the parties retain the benefit of their own retirement accounts, the trial court essentially ordered Wife to take on new obligations to which she did not consent. The trial court's action was therefore not an appropriate form of reformation. *See **id.***

Reformation is an equitable remedy. *See **Pierce v. Flynn**,* 656 S.W.2d 42 (Tenn. Ct. App. 1983). Equity, however, aids the vigilant. ***Brown v. Ogle***, 46 S.W.3d 721, 726 (Tenn. Ct. App. 2000) (quoting William H. Inman, *Gibson's Suits in Chancery,* § 93, p. 89 (7th ed. 1988)). Although Husband asserts that his mistake was the result of mere inattention, any fault for this situation certainly must lie solely with Husband, who executed an agreement he did not read and then neglected to disclose or even consider the

ramifications of his retirement plan election prior to the entry of the final divorce judgment. And despite the fact that Husband is the only party that can be attributed fault in this situation, it is Wife that suffers the burden of his mistake, being bound to Husband's daughter not only post-divorce, but also after Husband's death. Wife alone is therefore required to act to ameliorate Husband's mistake.[8]

We have no doubt that the trial court's judgment was based on its belief that doing so was the only way to ensure that Husband retained his retirement benefits, in accordance with the parties' mediated agreement. Based on the record and arguments presented, we must conclude that the trial court's decision to reform the parties' contract to impose additional burden on Wife was an abuse of discretion.[9] The original divorce judgment is therefore reinstated and all remaining issues are pretermitted.

## CONCLUSION

The judgment of the Knox County Circuit Court is reversed, and this cause is remanded to the trial court for all further proceedings that may be necessary. Costs of this appeal are taxed to Appellee Larry Gene Moore, for which execution may issue if necessary.

s/ J. Steven Stafford_____
J. STEVEN STAFFORD, JUDGE

---

[8] We do not discount that Husband will suffer a detriment if Wife is not required to shoulder these additional obligations. His burden, however, is minimal because there is no dispute that he is entitled to his full benefits during his life. Only if Wife outlives Husband will this issue even become relevant. And then, as previously discussed, the bulk of the injury lies with Husband's daughter or other heirs.

[9] As previously discussed, although Husband also vaguely sought to set aside the contract in his post-judgment motion, the trial court did not grant that relief, and Husband has not asked for that relief on appeal.